DESLOGE et al. v. TUCKER, Administrator, Appel-
lant.

Division One, May 30, 1906.

1. ADMINISTRATION: Notice to Sell Real Estate: Hand Bills:
Resident Legatee: Meaning of Devisee.   The statute (sec. 148,
R. S. 1899) requiring that, when a petition is lodged in the
probate court praying for the sale of real estate, "all persons
interested in the estate be notified thereof," and providing that
said notice may be by publication in a newspaper or ten hand-
bills put up in the county, except "that, in all cases where the
heirs or devisees of deceased are resident of the county where

such administration is had, there shall be personal service of the notice on such heirs or devisees," does not require the notice to be personally served on a mere resident legatee, where none of the devisees or heirs reside in the county. An heir is one on whom the law casts an estate upon the death of an ancestor. A devisee is one getting real estate by will, and the word "devisees" in this statute is used in its common law meaning. A legatee is a person to whom a legacy is given, and a legacy is a bequest or gift of personal property by will. So that where notice was by hand bills only, and all the heirs mentioned in the will resided out of the county, and only one legatee, to whom the will left $500, resided in the county and who was not served with personal notice, the probate court was not without jurisdiction to order a sale of the testator's real estate to pay the legacies and debts.

2. ————: ————: ————: **Non-Residence: Not Apparent on Face.** It will not be held, in a direct proceeding, that the probate court was without jurisdiction to order the sale of the decedent's real estate, after notice by ten hand-bills put up at ten public places in the county, where it does not appear, in any of the court proceedings or the officer's return, that the parties interested were not residents of the county. Where the publication was proper, if personal service was also necessary that fact should appear from the proceeding, or at least from the proof, and if it does not so appear, jurisdiction will be sustained.

3. ————: ————: **Appeal: Jurisdiction.** An appeal lies from an order confirming a sale of real estate by the administrator. And on such an appeal the jurisdiction of the probate court may be challenged in the circuit court.

4. ————: **Sale of Real Estate: Approval.** A sale of real estate by the administrator (and that includes a contract of sale) has no life or legal validity until approved by the court.

5. ————: ————: ————: **Fairness.** The paramount duty of the probate court in the first instance, and of the circuit court on appeal and of the appellate court, is to see that the sale of decedent's real estate was a fair sale, fairly made.

6. ————: ————: **Half Its Value.** The administrator entered into a contract to sell for $10,000 land which had been appraised at $5,000, and the prospective purchaser paid down $50, and agreed to pay the balance "as soon as the further and necessary orders of the probate court can be made and the defects in the title perfected." Afterwards and before the sale was approved, the legatees under decedent's will offered the administrator $18,000. The prospective purchaser, shortly after he bargained for the land and before the sale was approved, bargained to resell it to a lead company for $20,000. The ad-

Desloge v. Tucker.

ministrator was guilty of no fraud, but was not diligent in trying to find purchasers, for instance, the lead company. The probate court approved the sale, and on appeal by the legatees the circuit court disaffirmed the sale. *Held,* that the circuit court did not abuse its discretion in so doing, and the sale should not be approved.

7. ———: ———: **Disapproving Sale.** It is a sufficient reason for disapproving a sale by an administrator that the real estate was unnecessarily sacrificed.

8. ———: ———: **Inadequacy of Price.** A sale by an administrator is not a judicial sale until it is confirmed and a deed made. Until then the rule that mere inadequacy of price will not avail to avoid a judicial sale, does not apply.

Appeal from St. Francois Circuit Court.—*Hon. Robert A. Anthony,* Judge.

AFFIRMED.

*Politte Elvins, M. R. Smith* and *Barclay, Shields & Fauntleroy* for appellant.

(1) The fact that a legatee was not served with personal notice of the presentation of the petition for an order for sale is no irregularity under the statute and can not in any way prevent the approval of the sale. R. S. 1899, sec. 148. The statute indicates, by its proviso, that only heirs and devisees of the deceased party are within its terms. Only to them is it necessary to give notice, and to them such notice was given, as the record shows. (2) The real estate of a deceased person descends to his heirs, or passes to the devisees under his will. Aubuchon v. Lory, 23 Mo. 99; Chambers' Adm'r v. Wright's Heirs, 40 Mo. 482; Thorp v. Miller, 137 Mo. 239. (3) The fact that section 278 (R. S. 1899) confers on "a creditor and legatee and other persons having an interest on the estate" the right of appeal, does not indicate that a legatee should have notice of an application to sell land. If it did, a creditor should also

have notice, because a creditor can appeal. (4) ''Mere inadequacy of price is insufficient to set aside a judicial sale. There must be some fraud in the transaction as a general rule, where the sale is open and no improper practices are shown on the part of the purchaser, unless the inadequacy is so gross as *per se* to amount to prove fraud.'' Phillips v. Stewart, 59 Mo. 491; Walters v. Herman, 99 Mo. 529; Briant v. Jackson, 99 Mo. 585; Wagner v. Phillips, 51 Mo. 117; Railroad v. Brown, 43 Mo. 294. Or it ''must be so inadquate as to shock the moral sense and outrage the conscience.'' Davis v. McCann, 143 Mo. 172. We make this point simply because appellants allege inadequacy of consideration. There is no inadequacy of price— the land sold for all it is worth — and there is not the slightest taint of fraud in the whole transaction, or any evidence thereof. (5) The policy of the law is opposed to setting aside judicial sales of real estate. State ex rel. v. Sargent, 12 Mo. App. 237; Stewart v. Severance, 43 Mo. 322, 47 Mo. 366; Ex parte Cubbage v. Franklin, 62 Mo. 364; Lovitt v. Russell, 138 Mo. 474. (6) After the sale the whole matter remains *in fieri*, under the control of the court, until confirmation, but the court should confirm if the sale was fair. In confirming a sale courts decide on its. legality. 12 Am. and Eng. Ency. Law (1 Ed.), 219; Herman on Executions, sec. 261; Brown's Appeal, 58 Pa. St. 53; Mitchell v. Harris, 43 Miss. 314. While the matter of confirmation rests largely in the discretion of the court, that discretion is not absolute, and where the sale is fairly made, it is not a wise discretion to set it aside. Henderson v. Herrod, 23 Miss. 434; Sowards v. Prichett, 37 Ill. 517; 2 Jones on Mortgages, sec. 1638; Wells v. Rice, 34 Ark. 346. (7) The confirmation of a sale rests in the sound discretion of the court on consideration of all the attending facts and circumstances, and in the exercise of this discretion the court should not confirm the sale if in its opinion the sale was not fair or was not made in conformity with the law, but if

for a fair price and in conformity to law, the sale should be confirmed. 11 Am. and Eng. Ency. Law (2 Ed.), 1112, 1113; Bland v. Bowie, 53 Ala. 152; Eatman v. Eatman, 83 Ala. 478; Davis v. Stewart, 4 Tex. 223.

*Geo. D. Reynolds* and *George V. Reynolds* for respondents.

(1) Appellant having admitted that the whole matter of confirming or approving the sale is triable *de novo,* and yet remains under the control of this honorable court, and largely in the sound discretion of the court, we submit that the same doctrine applying to the circuit court, its finding and determination of the facts is conclusive and will not be disturbed by this court. (2) The order of sale and due service thereof is jurisdictional. The order in this case should, but does not show affirmatively that the heirs and devisees are nonresident of the county. In so failing, jurisdiction falls. If not good as to one, it falls as to all. Cunningham v. Anderson, 107 Mo. 371; Hutchinson v. Shelly, 133 Mo. 412; Young v. Downey, 145 Mo. 250; William v. Monroe, 125 Mo. 574; Lang v. Garbee, 105 Mo. 355; Cloud v. Inh. of Pierce City, 86 Mo. 365. (3) The right of appeal is to "any heir, devisee, legatee, creditor or other person having an interest." R. S. 1899, sec. 278. The objecting legatees are substantially the only "creditors" of the estate, and they are all the legatees — and all of them objected and now object to the confirmation of the sale. 2 Woerner, Am. Admr., sec. 467; Ferguson v. Carson, 86 Mo. 673. (4) This right of appeal lies on approval of a sale of real estate. McVey v. McVey, 51 Mo. 420; Wilson v. Brown, 21 Mo. 410; Wolff v. Wohlien, 32 Mo. 132. Section 278, Revised Statutes 1899, removes the difficulty pointed out in McVey v. McVey, supra. See also sec. 285, R. S. 1899; Coleman v. Farrar, 112 Mo. 82. (5) The administrator charged with the high duty of looking after the interests of the estate

will not be allowed to sacrifice them; he is held to the strictest discharge of his trust, as fully as is a trustee. 1 Woerner, Am. Admr., sec. 11; 2 Ibid, sec. 463; 2 Ibid, pp. 1060 and 1061; Vail v. Jacobs, 62 Mo. 130; Hardware Co. v. Brownlee, 186 Mo. 628. (6) The bargainor with the administrator acquired no title. 2 Woerner, sec. 478. He did not even pay the price — and he acquired no right. In re Estate of Albert, 80 Mo. App. 557. (7) This is not a proceeding to set aside a sale, as counsel for appellant argues and seems to think, but is a proceeding to disapprove the action of an administrator, which action does not become of any validity unless approved by the court. The cases cited by appellant's counsel all apply to consummated sales and are not applicable to this case.

LAMM, J.—This is an appeal by R. C. Tucker, administrator *cum testamento annexo* of the estate of John M. Desloge, deceased, from a judgment of the circuit court of St. Francois county disapproving a report of sale of real estate — said report having been confirmed in the probate court and certain heirs and devisees having appealed from that order to the said circuit court.

The terms of the will of John M. Desloge are pertinent to certain contentions made here, and the will, moreover, is curious — testament, attesting clause, the personality and identity of the scrivener (a medical man), together with a solemn perpetuation of his survices, as such, being accomplished by a single stroke and certified by testator himself. The will reads:

"Battle Creek Sanitarium, Battle Creek, Mich,

"Aug. 29, 1900.

"I hereby put my hand and seal to this instrument as being my desire of the disposition of my property, amount to about twenty-five or thirty thousand dollars ($25,000 or $30,000). Being in my right mind and in the faith, property to be disposed of as follows:

"Mrs. Jane Pullis, Jules Desloge, Sophia Desloge, Clara D. Pike, share in and alike four thousand dollars ($4,000) apiece; children of Louise Jamison share in and alike fifteen hundred dollars ($1,500); Mrs. L. M. Valle, Josephine Fuse, Firmin Desloge, Zoe D. Cobb, share in and alike, one hundred dollars ($100) apiece; to Miss Louis Pierce five hundred ·dollars ($500) ; to charity five hundred dollars, to be distributed according to the desire of my legal heirs. This disposition of property to be made after all legal and just debts against the same are settled.

"I, as the attending physician of Mr. J. M. Desloge for the past four weeks, can state that he has transacted all of his own business and is of a sound mind, and I and the two following gentlemen were present when J. M. Desloge made his desire known as to the disposition of his property, and do hereby testify by placing our names to this document; that in our hearing he made these statements which were written and then, after reading he stated it was correct, and signed the same in our sight.

"Jno. M. Desloge.

"H. P. Rand, M. D.
"John Glade.
"Vahan Pampian."

The learned trial judge, the Honorable Robert A. Anthony, made a written finding of facts and delivered an opinion, which finding of facts is fully sustained by the record and is, therefore, adopted as far as it goes. His finding reads:

"R. C. Tucker, as the administrator of the estate of John M. Desloge, deceased, presented his petition to the probate court of St. Francois county, Missouri, asking that the land in question in this suit be sold for the purpose of paying debts and legacies owing by said estate. At the July term, 1901, of said probate court, an order was made authorizing the administrator to sell

196 Sup.—38

the land at private sale. Prior to obtaining said order notices directed to all the objecting parties were posted in ten public places in said county of St. Francois twenty days before the first day of the July term of court. Neither the petition, order of sale, notices of application, return of sheriff showing posting of notices, nor any step taken in the proceeding to sell the land, discloses the fact that any of the heirs and devisees were residents or non-residents of the county of St. Francois.

"In pursuance of the order above referred to the administrator sold the land in question to Thomas H. Stam, on May 12, 1902, at private sale for $50 per acre, or a total of $10,000, only $50 of which has been paid to the administrator. A contract was entered into between the administrator, Tucker, and Stam, by which Stam agreed to pay him the further sum of $9,950 'as soon as the further and necessary orders of probate court of St. Francois county, Missouri, can be made and the defects in the title perfected.'

"Prior to the sale to Stam the land in question was appraised in due form at the sum of twenty-five dollars per acre.

"Soon after the sale to Stam and before it was approved by the probate court, objections were made by Jules Desloge and others to the confirmation, they having, before the report of sale was made and approved, offered the administrator the sum of $18,000 for the land, it being a sum of $8,000 in excess of the price to be paid by Stam.

"The sale of the land to Stam was approved by the probate court at its July term, 1902, and the parties interested in the estate, as heirs, devisees and legatees, except Louise Pierce, appealed to this court from the order approving such sale.

"Louise Pierce has entered her appearance in this court as one of the persons named in the will of John M. Desloge, and is objecting here to the approval of the

sale to Thomas H. Stam. She resided at Desloge in this county during the year 1901. By the will of John M. Desloge she is given $500, but she had no interest as an heir in the land of John M. Desloge.

"The will of John M. Desloge gives to certain parties named specific sums of money, but does not specify out of what funds such legacies are to be paid, whether from personal or real estate.

"This land at the time it was sold to Mr. Stam, on May 12, 1902, is valued by the witnesses all the way from $50 to $150 per acre. Two witnesses who are not shown to have any interest in the controversy, value it from $100 to $150 per acre.

"The administrator never offered the land to any one except the Desloge heirs and Thomas H. Stam. It is not shown that he made any attempt to sell the land to any of the several mining companies doing business in the vicinity.

"That the land had a greater market value than $50 per acre is shown by the fact that very soon after Mr. Stam bargained for it, he bargained to resell it to the St. Jose Lead Company at $100 per acre.

"Evidently the administrator did what he could to effect a sale to Jules Desloge and the other heirs of John M. Desloge, deceased. He was given to understand that at least Jules Desloge and some of his sisters did not wish to purchase the property.

"Although the report of sale made by the administrator shows that he was paid the sum of ten thousand dollars by Mr. Stam, yet the fact is that Mr. Stam has only paid the sum of $50.

"This court, on appeal from the order of the probate court approving the sale to Stam, is asked to disapprove the sale, one ground being that Louise Pierce, one of the persons named in the will of John M. Desloge, being a resident of St. Francois county during the year 1901, was, under section 148, Revised Statutes 1899, entitled to be served with a copy of the notice pro-

vided for by that section, and that if such copy of notice was not served on her, then the probate court acquired no jurisdiction to make the order of sale.''

Supplementing the foregoing facts, the record warrants this further statement:

John M. Desloge, decedent, was a single man. The legatees nominated in his will are his inheriting kin (barring Miss Louise Pierce), and the residuum of his estate, after paying legacies and debts, goes to said heirs. Josephine Fuse, heir and legatee, died after the will was probated and left adult children and one minor child to inherit.

Referring to the finding of Judge Anthony, to the effect that the land was sold to Stam on May 12, 1902, it may be said the record tends to show that the negotiations opened prior to that time, say, in April, 1902.

Referring to the same finding to the effect that shortly after Stam bargained for the land, he turned about and bargained to resell it to the lead company, at $100 per acre (a present profit of $10,000), the record further tends to show that Stam bargained with said lead company anent this sale early in the spring of 1902, possibly, in March or April, and the broad fact is inferable that he knew his purchaser and selling price before he closed his contract to buy.

Referring to the objections made to the report of sale, it may be said that all the heirs and legatees, in one form or another, joined therein. Further, it was shown below that, at the amount of Stam's bid, the estate would not pay legacies provided for after paying debts — the amount of the latter not being disclosed.

Referring, again, to Judge Anthony's finding relating to the attempts of the administrator to sell to the heirs of decedent, that finding may be supplemented with the further facts that the land was appraised several times — the last time, about twelve months before the sale; that the appraised value was twenty-five dollars per acre; that Jules Desloge, in the capacity of an

elder brother, assumed somewhat to act for and on be-
half of his sisters; that no direct attempt was made by
the administrator to sell this land to the sisters, but he
was informed by Jules Desloge the heirs would not buy,
that it was not convenient for some of them to raise the
money; further, that the land was offered to Jules Des-
loge at three-fourths of the appraised value and the ad-
ministrator was informed by him the heirs would not
take it at that sum. However, the legal authority of
Jules Desloge to represent the other heirs is not shown.
The record, in our opinion, further shows that no fraud
in fact or intent can be laid at the door of the admin-
istrator. He seems to have acted in good faith through-
out. He knew nothing of Stam's negotiations with
the lead company, nor of Stam's prospective windfall
in that direction, before he was bound to Stam — after
which time he felt bound in honor to carry out his con-
tract. In this connection, it may be said the heirs of
decedent knew nothing of the Stam offer until after it
had been accepted and the contract entered into, and
that the offer of some of these heirs to purchase for
$18,000, to pay a forfeit down and give a bond to comply
with their bid, came to Mr. Tucker after his own con-
tract with Stam.

It was further shown that the land in question was
surrounded by land belonging to lead companies; that
these companies were in active and paying operation
and that new developments of ore in that vicinity had
materially increased the going price of real estate dur-
ing the years 1901 and 1902— the price then tending
up.

On this record, the following questions are pre-
sented:

*First.* Had the probate court jurisdiction to make
any order of sale — and herein of two contentions: (a)
Did jurisdiction fail because Miss Pierce was not per-
sonally served with notice? And (b) did jurisdiction
fail because notice was posted in ten public places in

the county of St. Francois, and this without the probate proceedings showing that the heirs and devisees were residents or non-residents of said county?

*Second.* The matter of the sale remaining *in fieri,* and its confirmation resting in the sound discretion of the court, did the court err in disaffirming the sale?

Of these *seriatim.*

I. It is asserted by respondents and denied by appellant that the proceedings in the probate court were *coram non judice.* The contention is a double one and will be so treated.

(a ) In the first place, Miss Pierce, a resident of St. Francois county, was not served with notice. She was a legatee but not an heir, or a devisee in a technical sense. In this condition of things, it is insisted she should have been personally served with notice. Is this position tenable? We think not. The statute provides (R. S. 1899, sec. 148), as follows. "When such petition and such accounts, lists and inventories shall be filed, the court shall order that all persons interested in the estate be notified therof, and unless the contrary be shown on the first day of the next term of the court, an order will be made for the sale of the whole or so much of such real estate as will pay the debts of the deceased. Such notice shall be published for four weeks in some newspaper in the county in which the proceedings are had, or by ten hand-bills, to be put up in ten public places in said county at least twenty days before the term of the court at which any such order will be made, in the discretion of the court: *Provided,* that in all cases where the *heirs or devisees* of deceased are resident of the county where such administration is had, there shall be personal service of the notice required by this section on such *heirs or devisees,* made at least ten days before the term of court at which said order of sale is to be made."

Construing the proviso with the body of the sec-

tion, the phrase, "persons interested in the estate," evi-
dently was purposely left a broad one. It is not neces-
sary for us to say that only heirs and devisees were
meant by the general designation of "persons inter-
ested in the estate." For present purposes, it is suffi-
cient to hold that at least *some* of "the persons inter-
ested in the estate" are defined in the proviso to the
section as "heirs or devisees." This construction by
implication is within the exposition of this section in
Hutchinson v. Shelley, 133 Mo. 1. c. 413, and Young v.
Downey, 145 Mo. 1. c. 259-60.

The word "devisees" in the proviso was not, in
our opinion, used loosely and so as to include "lega-
tees." This is somewhat shown by the fact that in sec-
tion 146 the word "legacies" is used with legal precis-
ion in connection with "debts" — the existence of both,
or either, in excess of personal assets conferring the
right on the administrator to initiate proceedings to sell
real estate. The word *devisee* has a common-law mean-
ing, and, by using that word, the Legislature is pre-
sumed to have also adopted that meaning. "An heir is
one on whom the law casts an estate upon the death of
the ancestor; a devisee indicates the party getting real
estate by will." [Brown v. Bank, 66 Mo. App. 1. c.
431.] On the other hand, *legatee* is defined as "a person
to whom a legacy is given." [Black's L. Dic., tit. "Le-
gatee."] And, primarily, *legacy* is defined by the same
author as "a bequest or gift of personal property by
last will and testament." True it is, legacy and de-
vise, legatee and devisee, are often used as interchange-
able terms in wills and every-day conversation, and,
therefore, courts would not feel fettered to any nice
construction where subject-matter or context shows the
words were used interchangeably, and as of the same
import. But such popular and loose construction is
hardly permissible in view of the statutory rule of her-
meneutics, Revised Statutes 1899, section 4160. Thus:
"The construction of all statutes of this State shall be

by the following additional rules, unless such construction be plainly repugnant to the intent of the Legislature, or of the context of the same statute: First, words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having peculiar and appropriate meaning in law shall be understood according to their technical import.''

Not only does the letter of the statute require no personal service of notice to a legatee, but the reason of the thing lies with that view. Because: To some extent, at least, an administrator represents creditors and legatees, in that his application to sell real estate is on their behalf, and, otherwise than in their interest, he may not meddle with the real estate of decedent. To some extent, then, legatees and creditors are already in court through him on his petition. On the other hand, devisees and heirs own the real estate, subject to the payment of creditors and (in a given instance) legatees, and when it is proposed to subject their real estate to the payment of creditors and legatees they become, in a sense, an adversary party and entitled to personal service of notice, when residents of the county, but only when such residents. If the contention of respondents be allowed and a mere resident legatee, in this instance Miss Louise Pierce, is held entitled to personal notice, then the logic of the situation would require that resident creditors also have personal notice; for a legatee, in one view, is but a creditor — made so by the will — but with rights subordinate to those of creditors at large.

The contention in hand is, therefore, ruled against respondents.

(b) But there is a deeper question in the case, and that is this: it nowhere appears on the face of the probate proceedings or in the sheriff's return that respondents were either residents or non-residents of St. Francois county. In the absence of this affirmative showing, respondents contend the probate court acquir-

ed no jurisdiction over them. Put another way, this contention is tantamount to the proposition that notices posted in ten public places in St. Francois county, being only effective as against non-resident heirs and devisees, the fact of non-residence should appear affirmatively in the proceedings as a predicate to base such character of service upon. It may be said, in passing, it was shown by indirection at the trial that respondents were in fact non-residents of St. Francois county.

If the attack were a collateral one it would be without merit, because, though probate courts are courts of limited jurisdiction, yet, moving in the orbit of their constitutional and statutory powers, in the administration of estates, they are not inferior courts, and the same liberal presumptions and intendments are indulged to sustain their proceedings and jurisdiction (attacked collaterally) as are indulged in behalf of other courts of record. [Robbins v. Boulware, 190 Mo. l.c. 51; Covington v. Chamblin, 156 Mo. l. c. 587; Langston v. Canterbury, 173 Mo. l. c. 131; Johnson v. Beazley, 65 Mo. 250; Brooks v. Duckworth, 59 Mo. l. c. 51-2.] Accordingly, it has been held to be the rule in collateral attacks, that the facts tending to show the judgment or order of a probate court is void for lack of jurisdiction should be found on the face of the record or, at any rate, in the files or returns. Otherwise, regularity will be presumed, i. e., the orders or judgments assailed will be presumed to have been based on proper evidence or other precedent steps.

But this is an appeal from the order and judgment of the probate court confirming the sale of real estate and it may be said that the attack is not collateral in a strict sense, but is made directly in the proceeding itself. It is true that by section 278, Revised Statutes 1899, an appeal under the sixth subdivision would lie from the order for the sale of real estate, and it is true that no such appeal was prosecuted in this case. But an order confirming such sale is the climax of the

matter, and an appeal lies under the fifteenth subdivision of that section, reading as follows: "Fifteenth, and in all other cases where there shall be a final decision of any matter arising under the provisions of this chapter." We can perceive, therefore, no reason why a question of jurisdiction to make the original order of sale might not obtrude itself on an appeal from the final order confirming such sale, in accordance with the general rule that questions of jurisdiction may arise at any phase of the case, here or below.

Conceding that notice in these proceedings is a jurisdictional fact (see authorities cited under point 2 of respondents' brief), yet the question remains, what kind of notice? The administration act is somewhat of a code unto itself. It was carefully written in plain language to be applied by plain courts in the interest of simplicity in the administration and devolution of estates. Where it furnishes a guide, therefore, the analogies and niceties of the general law need not be invoked. Examining section 148 with an eye to the contention under consideration, it appears that a publication of notice of the application to sell real estate and of the order to show cause why such sale should not be made, is mandatory in every instance, as we construe that section. It says that "the court *shall* make an order that all persons interested in the estate shall be notified thereof." It says that "such notice *shall be published* for four weeks," etc., or "by ten handbills to be put up at ten public places," etc. And it provides, furthermore, that resident heirs or devisees shall be personally served. It would not seem that the publication of a notice by posting and also the service of that notice personally on resident heirs and devisees are repugnant to, or that they superfluously overlap, each other. Both can stand, both serve a purpose. The publication serves a purpose of wise publicity, operating generally on the class designated as "persons interested in the estate." The personal service on resi-

,dent heirs and devisees serves an added purpose easily apparent, and, such service of notice being only necessary, when the fact of residence in the county (where administration is had) exists; it would seem that in the absence of a presumption either way on the fact of residence and in the absence (as in this case) of an affirmative finding or showing of such residence in St. Francois county, the proceedings on their very face show a compliance with statutory law, *i. e.*, show ·jurisdiction to make the order of sale. In other words, the publication was properly made by posting; if, now, personal service was also necessary, that fact should appear from the proceedings, or at least from the proof, and it not appearing, the jurisdiction is sustained.

Under this view, the contention of respondents now up for consideration is unsound. Accordingly, it is disallowed.

II. It is conceded by the learned counsel for appellant that the matter of the sale, pending its confirmation, remained *in fieri*, and that its confirmation·rests in the sound, *i. e.*, judicial, discretion of the court.

With this concession in the case, appellant insists the court erred in disaffirming the sale, and, therefore, the cause should be reversed and remanded.

Did the court err on this behalf? We think not, and this is so because:

(1) Section 167, Revised Statutes 1899, provides for a full report of the administrator's proceedings under an order of sale, and section 168 provides that "if such report and proceedings . . . . be not approved by the court, his proceedings shall be void." One who runs as he reads may understand this statute. It means a sale by the administrator, of itself (and this necessarily includes any contract of sale), has no life until such time as it has passed under the eye of the court and has been breathed upon with the breath of judicial sanction. It means, furthermore, that the

paramount duty of the probate court in the first in-
stance, and of the circuit court and of this court on ap-
peal, is to see to it that the sale was a fair sale, fairly
made. An administrator is but a trustee and is held to
the duty of diligence in protecting his trust. "If at
first," he "don't succeed," he must "try, try again."
The evidence satisfies us, as it did the court below, that
this land was unnecessarily bargained away at some-
thing like half its market value. It satisfied the court
below and satisfies us that while the administrator was
guilty of no fraud, yet that he was not diligent in seek-
ing purchasers among those most likely to buy, to-wit,
lead companies operating in that vicinity.

Confronting this situation, why should a court
make a present to Mr. Stam of $10,000 of John M. Des-
loge's estate, thus allowing him to reap where he had
not sown?—feather his nest with others' feathers? The
matter is put to us somewhat in the light of punctilio,
or in the light of sparing the feelings of the adminis-
trator or of Mr. Stam. But no such questions are in-
volved. Such questions do not measure beyond the
mark of coloring matter and entirely miss the heart of
the issue. The real estate was necessarily sacrificed
and that is judicial reason enough to refuse to confirm
the sale. The sale was for less than would pay debts
and legacies, and hence, the interests of the legatees
were unnecessarily sacrificed, and that is a further jud-
icial reason for refusing to confirm the sale. The heirs
were interested in a surplus. That surplus never
sprang into existence, though it hangs dangling before
the eyes of all—ripe for the plucking. Hence, the in-
terests of the heirs were sacrificed, and that is further
judicial reason for refusing to confirm the sale.

If the interest of Mr. Jules Desloge was alone to
be considered, a somewhat different tinge might be
given the case, because the administrator made fair
effort to have him, and through him (as shown by his
admissions) the other heirs, take this land, as they,

*in solido,* had a legal right to do under the law at three-fourths of the appraised value, in the absence, of course, of injury to, and reasonable objections by, legatees or creditors. But we are not dealing with Jules Desloge alone. The case involves the interests of his sisters, who it seems were not able to buy, and it involves the interests of the heirs of Josephine Fuse, now dead, who left a minor child, and it touches the interests of the legatees, as such.

(2) We are cited to an array of authorities by the learned counsel of appellant showing that inadequacy of consideration, unaccompanied by other facts appealing to a chancellor's conscience and discretion, will not avoid a judicial sale. But these cases are not in point. The sale in hand is not a judicial sale, speaking with precision, until it is confirmed and a deed made. If this sale had been confirmed and a deed passed, and if a bill had been lodged in a court of equity to set the sale aside for inadequacy of consideration (nothing more appearing), the authorities to which we are cited would apply. But the reason of the rule fails, and we cannot give our consent to such a doctrine, as applied to an administrator's sale, when the only question is: Shall it be confirmed?

The judgment below was clearly right, and must be affirmed.

*Brace, P. J.,* and *Valliant, J.,* concur; *Graves, J.,* not sitting.