## D. K. COX v. THADDEUS C. JONES and SAM PEPPER, Appellants.

### Division One, June 14, 1910.

1. **EJECTMENT: Parties Defendant: Landlord: Conflicting Statutes.** Whether or not Sec. 543, R. S. 1899, providing that "in actions to recover possession of real estate, the landlord and tenant thereof may be joined as defendant," is *in pari materia* with Secs. 3056, 3057, 3058 and 3060 of Chapter 24, entitled "Ejectment," or whether this latter chapter is somewhat a code unto itself in regulating actions of ejectment, and whether or not the opinion in Mann v. Doerr, 222 Mo. l. c. 14, in which Sec. 543 was not considered, correctly stated the true statutory rule as to joining the landlord and tenant (in the first instance) as defendants in actions of ejectment, are points adverted to in the opinion in this case, but not decided because not issues, and any ruling thereon would be *obiter*.

2. **WILL: Devise to Heirs of Body.** A devise to a daughter and "the heirs of her body, forever" creates a fee-tail or life estate in the daughter and a remainder in her bodily heirs.

3. **———: Interpretation: Fee: Subsequent Clause.** If a devise of an estate be made to a given devisee, the estate granted may not, by subsequent ambiguous words inferential in their intent, be cut down to a less estate. On the contrary, an estate granted in one clause of the will may be cut down to a lesser estate by an express provision to that effect, or by words so strong and clear as to have that effect by plain and necessary implication.

4. **———: ———: ———: ———: To Bodily Heirs.** In the second clause of the will the testator gave to his daughter Ann certain lands, in the third clause certain other lands to his daughter Amanda J., in the fourth clause certain other lands to his daughter Sarah J., in the fifth clause certain other lands to his son Alvin B., and in the sixth clause said: "The bequests here made to my three daughters are made to them and the heirs of their body, forever, and if any one or more of them should die without heirs of their body, then the property here bequeathed to them shall revert to and descend to my other heirs as herein expressed." *Held*, that by the second clause, standing alone, he gave to Ann a fee-simple estate; but that clause cannot stand alone, but must be read in connection with the sixth clause; and when so read, the fee-simple estate given by the second clause was cut down to a lesser or a life estate by the express words of the sixth clause.

Cox v. Jones.

5. ——: ——: ——: ——: ——: Perpetuities: Remainder Over. Nor was said sixth clause void as obnoxious to the rule against perpetuities. It created a life estate in the daughter with a remainder over in fee (in the event of the death of the daughter without heirs) in the heirs of the testator, and there was no uncertainty as to whom the fee would go; if there were bodily heirs of a daughter the estate went to them upon her death; if there were no bodily heirs surviving her, the estate went upon her death to testator's heirs.

6. ——: ——: Absent Words "Fee-Simple," "Absolute Estate," Etc. The absence of intensifying and qualifying words, such as "fee-simple," "absolute estate," "absolutely," etc., from clause two of the will, declaring "I give to my daughter Ann" certain lands, are of no significance where there is no ambiguity in the subsequent clause limiting the estate to a fee-tail.

7. ——: ——: Intervening Clauses. The fact that other clauses intervene between the one giving Ann certain lands and the one cutting down the devise to a life estate, should not be allowed to impair the operative effect of the last clause, where the clauses clearly relate to each other. The intention is to be ascertained from the whole will. See opinion for a summary of rules of interpretation.

8. ——: ——: Life Estate to Wife. The words of the testator in clause one granting to his wife certain lands "during her natural life," strengthen rather than weaken the view that he intended to give his daughters only a life estate; when in the next three clauses he gave certain other lands to each of them by separate clauses, and then by one subsequent clause said "the bequests here made to my three daughters are made to them and the heirs of their body, forever."

9. ——: Justice and Fairness of Will. Where the will plainly gives to a daughter a life estate only, contentions that so interpreted it is unjust and unfair, are wholly wide of the mark in an action of ejectment.

Appeal from Platte Circuit Court.—*Hon. Alonzo D. Burnes*, Judge.

AFFIRMED.

*Ardey Gabbert, James W. Boyd* and *C. H. Hillix* for appellants.

(1) Subdivision sixth of this will does not and did not invalidate, or set aside, or cancel or destroy

the title given by paragraph or subdivision two. This clause of the will is illegal and undertakes to create and establish a perpetuity in land titles. It undertakes to say that the three separate tracts of land therein above willed respectively to the testator's three daughters, separately, by different clauses, shall be by clause six limited to them and to the heirs of their bodies; but if any one or more of them should die without heirs of their bodies then the said property by said will bequeathed to them shall revert to them and descend to the heirs of the testator as therein expressed. In other words, the respondent contends that this clause undertakes to limit the title of Ann Harris to a life estate; and not only to a life estate for and during her own life, but if she should die without bodily heirs then the land should go to the other two daughters, Amanda J. Scott and Sarah J. Scott, for their respective natural lives; provided and if said Amanda J. Scott or Sarah J. Scott should die without bodily heirs, then said land should go to the other one or her bodily heirs and then if she died leaving no bodily heirs it should descend and become the property of Alvin B. Scott. Such a provision in a will is contrary to law, and is null and void. Sheppard v. Fisher, 206 Mo. 208; Lockridge v. Mace, 109 Mo. 152; 1 Washburn (4 Ed.), p. 110, sec. 57; Rice on Modern Law of Real Property, p. 755, sec. 270; Milfin's Appeal, 121 Pa. St. 205. A limitation for a longer period than a life and twenty-one years is void. Lockridge v. Mace, 109 Mo. 166. If a limitation is made to depend upon an event which may occur immediately after the death of the testator, but which may not occur until after the lapse of a prescribed period, the limitation in the will is void. (2) The fact that clause "sixth" is void, does not in anywise invalidate clause two, by which the said land was devised to Ann Harris. Sheppard v. Fisher, 206 Mo. 245. (3) When the words of a will at the outset clearly indicate a disposition

in the testator to give the entire interest, use and
benefit of the estate, devised absolutely to the first
donee, that estate will not be cut down to a less estate
by subsequent ambiguous words inferential in their
intent.   Jackson v. Littell, 213 Mo. 596; Yocum v.
Siler, 160 Mo. 289; Gannon v. Albright, 183 Mo. 252;
Small v. Field, 102 Mo. 127; Roth v. Rauschenbush,
173 Mo. 594; Naylor v. Godman, 109 Mo. 543.

*James H. Hull* and *Groves & Beery* for respond-
ent.

(1) Even admitting that clause six means what is
said in appellants' brief, yet as a matter of fact, the
vesting of the estate would not be beyond the life or
lives in being and twenty-one years thereafter.   The
estate would vest immediately upon the death of the
surviving life tenant, even if the construction they
are contending for should be considered.   So long as
the title must vest and can be conveyed within the
period of time of a life or lives in being and twenty-
one years, the rule is not violated, even worn on this
strange deformed construction.   (2) Its meaning is
free from doubt and there can be no question as to
what the testator meant, viz., to Ann Harris for life,
fee to her children, if any, and if no children, then ab-
solute title to testator's other children as named in
the will.   Each of the daughters has been provided
with a home for life.   If other property reverted to and
descended to them they would have the absolute title
to such part as did revert and descend to them.   They
could do with that as they please.   The father had
provided, as far as he could, a home for his wife and
three daughters as long as they might live.   His inten-
tion is clearly expressed.   He wanted both the widow
and his daughters to have a life estate.   Gannon v.
Pauk, 200 Mo. 85; Naylor v. Godman, 109 Mo. 550; Mc-
Millan v. Farron, 141 Mo. 63; Utter v. Sidman, 170
Mo. 284; Hunter v. Patterson, 142 Mo. 313.

LAMM, P. J.—Ejectment in Platte Circuit Court, brought January 10, 1907. Originally there were four defendants. Two of them went out on demurrer at the close of plaintiff's evidence—plaintiff saving no exception to the ruling and taking no appeal. The verdict came in against Jones and Pepper on a trial to a jury. From a judgment entered on that verdict the two remaining defendants appeal here, making no question on the monthly rental value or the damages assessed *nisi*.

The land in controversy is the east half of the southwest quarter, section 13, township 54, range 36 in Platte county, Missouri.

The petition is conventional, laying ouster as of April 10, 1906. The answer was a general denial.

The controversy lies in a nutshell, *viz.*: Ann (intermarried with Jefferson Harris) was a daughter of John C. Scott, and died April 6, 1906, leaving several children surviving her. Scott was the common source of title and died testate, leaving a widow, three daughters and one son surviving him. His will, dated August 27, 1863—a codicil, immaterial here, being added in 1865—was probated on April 6, 1869, in the Platte Probate Court, Scott residing in Platte county. Ostensibly claiming a fee-simple title under a devise in her father's will, Ann Harris and her husband conveyed to defendant, Jones, in 1877, by warranty deed. Jones made entry under that deed and thereafter held possession. Claiming that their mother took only a life estate under the will of her father and that the children of Ann Harris took as remaindermen when her life estate fell in, some of her children conveyed by separate deeds to the plaintiff. Subsequently Cox brought partition against the non-conveying children of Ann Harris and the descendants of one dead for a division of the land. Such steps were taken in that case that the proceeding ripened into a judgment, sale

and sheriff's deed in partition conveying the land to Cox.

If defendants' interpretation of Scott's will be sound, Cox got no title by his several deeds and Jones took title in fee-simple by his. *Contra*, if plaintiff's be sound, Jones got nothing by his deed but the life estate of Ann Harris, her children held the reversion as remaindermen, *ergo*, their several deeds and the sheriff's deed in partition conveyed a fee-simple title to Cox, Ann Harris's life estate having lapsed at the time of the partition and the bringing of this ejectment suit.

Such being the bone of contention, a determination of the case seeks the material clauses of the will, *viz.*:

"First: I give and bequeath to my beloved wife, Jane C. Scott, all of my home tract of land, it being all of that part of the southeast (S. E.) quarter of section fourteen in township 54 of range 36, as lays south of the creek, and all that of the tract of land purchased by me of Aquilla Phy as lays south of the same creek adjoining the above described tract of land —and all of my other property, both real and personal or mixed, not otherwise expressly devised herein, during her natural life. And I desire her from my personal property to pay off any debts I may be owing, and give to my three unmarried children, Sarah J., Amanda J., and Alvin B. Scott gifts by way of advancement equal to what has been given to my daughter Ann Harris, at any time it may in her judgment be necessary and right.

"Second: I give to my daughter Ann Harris, wife of Jefferson Harris, the east half of the southwest quarter of section 13 in township 54 of range 36, being 80 acres, subject to the reservation of the timber on all the land on the north side of the "Steels" Branch on that 80 acres, and two board trees on said 80, to be designated by Mr. James Steel. The fence now dividing the tract is to be moved on the line, and

if not sufficient to make a good fence, the balance of the rails are to be made of timber from the east 80 of the tract.

"Third: I give to my daughter Amanda J. Scott, the west half of the southwest quarter of section 13 in township 54 of range 36, and all the timber on the land on the north side of "Steels" Branch on the east half of said quarter section and two board trees on the east half of said quarter section to be designated by Mr. James Steel.

"Fourth: I give to my daughter Sarah J. Scott, all of that tract of land purchased by me of Aquilla Phy, laying north of the creek and the timber off of five acres running east and west opposite hers on the south side of the creek on the home tract.

"Fifth: I give to my son Alvin B. Scott the 98 acres known as the Terry and Cox tract, being the northeast quarter of section 14, township 54, range 36, and also all the real estate hereby bequeathed to my beloved wife, Jane C. Scott, at her death.

"Sixth: *The bequests here made to my three daughters are made to them and the heirs of their body, forever, but if any one or more of them should die without heirs of their body, then the property here bequeathed to them shall revert to and descend to my other heirs as herein expressed.*"

There was testimony that the devisee, Amanda J. Scott, intermarried with T. C. Jones, defendant. Children were born to them who, with their mother, were living at the time of the trial. The devisee, Sarah Scott, also married and had four sons born to her—she and they living. The trial court took plaintiff's view of the will, *viz.*, that Ann Harris took a life estate with remainder over to the heirs of her body, that when she died plaintiff's deeds from some of these heirs operated to convey him an undivided interest in the land and created a tenancy in common with those living heirs of her body who had not con-

veyed, and that by the partition proceedings and deed following plaintiff having acquired the whole title, that title drew to itself the right of possession as against Jones, grantee of Ann Harris, and Pepper, Jones's tenant.

Plaintiff's instructions, consonant with that view, were given, and defendants', *contra,* were refused. When we rule on the will, such ruling settles the assignment of error on the giving and refusing of instructions. Hence it will not be necessary to produce them here.

I.   Referring to the two defendants dismissed on demurrer, it is well enough to say that one was the wife of Thaddeus C. Jones, and devisee under the third clause of the will. Why she was joined as a defendant in ejectment, a purely possessory action, is dark. [Bouton v. Pippin, 192 Mo. 469.] The other was John Clinton Jones, son of Thaddeus C. It seems that on the third day of November, 1906, Thaddeus and his wife made a deed to John Clinton in consideration "of the sum of love and affection and one dollar to them paid by" John Clinton, conveying to him the *locus in quo,* which deed was acknowledged and spread of record.   John Clinton was his own man and doing for himself, we gather, but took no possession under his deed, his father holding possession, proprietorship and domination over the land—his tenant, Pepper, attorning to him.

No question was made below or is lodged here relating to the propriety of joining the landlord and tenant, in the first instance, as defendants in ejectment. We shall assume they were joined by virtue of section 543, Revised Statutes 1899, reading: "... And in actions to recover possession of real estate, the landlord and tenant thereof may be joined as defendants, and any person claiming title or a right of possession to real estate may be made a party plaintiff or

defendant, as the case may require, to any such action." Whether that section is *in pari materia* with sections 3056, 3057, 3058 and 3060, chapter 24, Revised Statutes 1899, entitled "Ejectment," or whether the latter chapter is somewhat of a code unto itself in regulating the action of ejectment and the parties thereto, we need not stop to inquire, there being no such question here. But in the interest of jurisprudence, obedience being miserable when there is no certainty in the law, it is well to point out that if section 543, supra, announces the right rule in joining the landlord and tenant (in the first instance) as defendants in action of ejectment and if sections 3056-7-8 and 3060 do not state the whole statutory rule on the subject, then what was said by the writer in Mann v. Doerr, 222 Mo. in the last two paragraphs of page 14, explanatory of the ruling in Hunter v. Wethington, 205 Mo. 284, may have been said unadvisedly; for he did not have section 543 in mind when writing those paragraphs. However, the matter now up is afield under this record and should be dealt with when it comes here as a live and decisive question, rather than by way of *obiter,* as a ruling now would be.

II.  The construction of the will of John C. Scott is the blunt and single question on which the case breaks. Before attending to the words of the will we may profitably pause a little to marshal and consider applicable rules of construction; for all construction or interpretation of a writing should proceed on the theory that the rules therefor are on a level with the principal and most worthy parts of the subject-matter. It is with rules, as it is with tools, to use them sensibly we must know them. Our decisions are so many and so rich with learning in that behalf that new exposition smacks of vanity. An excess of exposition darkens wisdom. Therefore, we need neither cite nor quote from them to establish mere commonplaces of the law.

Nor need we marshal the reasons underlying such commonplaces. Reason is a chief and excellent thing, as all just men agree, but to seek (or demand) a reason for everything subverts reason itself. [2 Coke 75.]

Attending then to those pertinent general precepts of the law, whose office it is to quicken the conscience and inform the judgment of courts in interpreting wills, they may, in part, be summarized as follows:

(a). The best interpreter of a will (all its separate parts being considered) is the will itself. The language of wills is rarely the same, hence each will stands largely on its own terms, and cases construing wills are rarely of universal application.

(b). To interpret and to reconcile one clause of a will with another, where that can be done without straining the words, or corroding the bowels of the text, is the best mode of interpretation.

(c). That interpretation is to be made that will cause the thing to stand rather than fall; for it is a maxim of the law that it is to the interest of the State that the last will of its citizens be sustained. (*Interest reipublicae suprema hominum testamenta rata haberi.*)

(d). The intention of the testator is the soul of the will. "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." [R. S. 1899, sec. 4650.] That statute is but declarative of a settled and venerable rule of judicial construction; and that intent, when gathered from the four corners of the instrument (if not violative of some established rule of law) must be given full and ungrudging effect—mere technical rules of construction to the contrary notwithstanding.

(e). In seeking the soul of a will, to-wit, the intent and meaning of the testator, the court will read the will from the standpoint of the testator as near as may be, considering the relations of the testator

to the beneficiaries named and the circumstances surrounding him when it was made, mindful that the sense of the testator's words is to be taken from the occasion of speaking them, that a will is completed by death and speaks from that time; and that words used are to be understood as having the meaning and sense indicated by the whole instrument. Every clause of the will must be given effect, if that be possible, and to this end, if need be (and only then), words may be supplied or omitted and sentences transposed.

(f). A will, by force of the very word, is a solemn instrument. The law so deals with it. Mankind so regard it. No man with death in his eye is presumed either to trifle or to lie. A testator sits, a plain man, as a chancellor in a domestic tribunal dealing out equity to the natural objects of his bounty in a decree (final as to him) in the light of his fireside knowledge. Therefore, courts deal with his language in its plain and homespun import, avoiding hairspun theories and over-nice refinements and subtlety in interpretation, breeding ambiguities whereby the provisions of the will may be sunk in bogs of doubt or be caused to perish by judicial construction.

(g). If a devise of an estate be made to a given devisee, the estate granted may not, in words following, be cut down to a less estate by use of ambiguous words inferential in their intent. For example, a fee-simple estate once granted will not be cut down by such mere ambiguous and inferential words following to a fee-tail, or one for life. *E converso,* if an estate be granted in one clause of the will its quantity may be cut down to a lesser estate by an express provision to the effect, or by words so strong and clear as to have that effect by plain and necessary implication.

(h). The entailment of estates is obnoxious to the policy of our laws. Therefore, if an estate tail be granted by will or deed either by express words or by necessary implication, it is at once struck down by our

statute and another substituted for it, *viz.*, an estate for life to the first taker, remainder over in fee-simple absolute to the next taker, nominated, or by the course of the common law. [R. S. 1899, sec. 4592; *ibid*, sec. 4594; *ibid*, sec. 4645 and cases *infra*.]

Applying the foregoing rules in construing Scott's will, it must be held that the judgment below was right. We so hold, because:

It may be conceded to appellants that the general language of the second clause of the will, *viz.*, "I give to my daughter Ann Harris, wife of Jefferson Harris, the east half of the southwest quarter," etc., was sufficient to devise a fee-simple estate without the use of the word "heirs" or "heirs and assigns" or "heirs and assigns forever" or other words earmarking the estate as a fee-simple absolute at common law. That view of the matter arises from the clear words of the statute, section 4646, Revised Statutes 1899, reading: "In all devises of lands or other estate in this State, in which the words 'heirs and assigns,' or 'heirs and assigns forever,' are omitted, and no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same, and shall convey an estate in fee-simple to the devisee, for all such devised premises." Such was the statute when the will was written (R. S. 1855, p. 1574, sec. 46), and when it was probated (R. S. 1865, p. 531, sec. 45). See also Revised Statutes 1899, section 4590, in the Statute of Uses. Now, if the will had stopped as to Ann Harris with its second clause, it is plain that under the statute just set forth she would have taken an estate in fee simple. But the will did *not* stop with its second clause, and, since it did not stop there, neither should we. By the mandate

of the statute we must look further and see if there are ''expressions'' in the will making it appear that the devise was intended to convey a life estate only, and see whether there was any further devise made of the premises, to take effect after the death of the first taker. We find in clause six the very conditions and ''expressions'' which the statute provides shall deny to the general words of the granting clause the effect to create an estate in fee-simple absolute. Thus, having also used unequivocal language in the third and fourth clauses in devises made to his two other daughters, which general language, if nothing else appeared, would confer title in fee, the testator in clause six comes back to the subject-matter of all three of his daughters' devises and therein limits clauses two, three and four and cuts down the estates there granted by unequivocal words, *viz.,* that the devises (bequests) ''here made to my three daughters *are made to them and the heirs of their body, forever.*'' Those are learned and technical words, having a settled meaning in real estate law. They create a fee-tail estate. [Clarkson v. Clarkson, 125 Mo. l. c. 385; Utter v. Sidman, 170 Mo. l. c. 297 *et seq.*; Bone v. Tyrrell, 113 Mo. 175; Hunter v. Patterson, 142 Mo. 310; Reed v. Lane, 122 Mo. 311; Miller v. Ensminger, 182 Mo. 195.] Such estate tail was by virtue of said statute at once struck down and another substituted, *viz.,* one for life in each of the daughters in the land devised to them respectively; and by virtue of the same statute (and R. S. 1899, sec. 4592 and 4593), the heirs of their respective bodies, alive at the life tenant's death, took a fee-simple absolute when the respective life estates lapsed.

Reading clause six more closely we see that the devised premises were further devised to take effect after the death of the first devisee. If there were no heirs of the body of any given daughter then alive, the land reverted and descended to the testator's other

heirs (all of them) absolutely under the statute quoted. If there were such heirs of the body, the land went to them on the death of their ancestor, the life tenant. As either the one or the other of these contingencies was bound to happen, the thing resolves itself into a *certainty* that a "further devise" was "made of the devised premises to take effect after the death of the devisees to whom the same shall be given." [Armor v. Frey, 226 Mo. 646.]

The testamentary provisions here are obviously not the same as in those wills held in judgment in Gannon v. Pauk, 200 Mo. 75; Yocum v. Siler, 160 Mo. 281; Wells v. Fuchs, 226 Mo. 97; Sevier v. Woodson, 205 Mo. 202; and others of that class where there was either an absolute devise of real estate with a contingency following cutting down the estate on its happening, which contingency (under the facts in judgment in those cases) could never happen, or where an attempt was made to cut down an estate granted by ambiguous words following of inferential intent. Hence, the doctrine of these cases, relied on by appellants, is not applicable here.

An ingenious argument is advanced having for its purpose the interpretation of the sixth clause so that it would be obnoxious to the rule against perpetuities, therefore void and to be read out of the will. We shall not develop the contention, for on any view we can take clause six did not violate the rule against perpetuities. [Shepperd v. Fisher, 206 Mo. l. c. 238 *et seq., quod vide.*] It created a life estate with a remainder over in fee (in the event of the death of the devisee without heirs) in the heirs of John C. Scott mentioned in the will, and, in the event the devisee died with heirs of her body in being, then in them.

There are minor contentions pro and con in the briefs of learned counsel. For instance, it is argued for respondent that the absence of intensifying and qualifying words, such as "fee-simple," "absolute

estate," "absolutely," and other words frequently used by testators to pass a fee as distinguished from a base or qualified fee, in clause two of the will, is of some significance. Undoubtedly where doubts and ambiguities exist the use of words clearly indicating the grant of a fee-simple estate in the first instance is of value in solving them, but that method of interpreting a will, frequently used where the case demands it, is out of place, absent ambiguity, as here. Again, it is argued for appellants that clauses intervene between the second and sixth of the will and that we should allow that fact some force as tending to impair the operative effect of clause six on clause two. But where clauses clearly relate to each other, as these do, to follow the lead of that argument would override the rules of interpretation we have prescribed for ourselves at the outset, commanding the whole instrument, all its terms and words, to be considered in getting at testator's intent. Again, it is argued that under the testamentary plan adopted by testator when he wished to grant a life estate he said so in so many words—witness, the life estate granted to his widow by clause one of the will where the phrase, "during her natural life," is used. That in the absence of similar phrases in other clauses of the will we ought not to construe the intent of the testator to be that his daughters took a life estate only. But learned counsel inadvertently argue ill in that behalf under the terms of this will; for while he does not say in so many words that his daughters should take a life estate, yet by the use of legal terminology, necessarily involving that idea, his intent is clearly seen, and that intent is reinforced by expressions in his will plainly disposing of a remainder after the death of his daughters respectively.

Reference is made on both sides to the justness and fairness of testator's disposition of his property, assuming respondent's theory. Respondent defends.

Appellants doubt. But where the will is plain those contentions are wide of the mark in an action of ejectment.

The case was well tried and well decided. Let the judgment be affirmed. It is so ordered. All concur.