HARFORD WILLIAMS et al. by Curator, Respondents, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 17, 1913.

1. **PLEADING: Answer: Appointment: Incidental Admission.** An answer which attacks the validity of an appointment of a curator, but incidentally concedes that the appointment was made by the probate court and asks that such appointment by the probate court be set aside, is an admission that the appointment was made by the court, which prevents raising the question on appeal.

2. **PROBATE COURT: Jurisdiction: Presumption: Collateral Proceeding.** The probate court, in the appointment of curators acts as a court of general jurisdiction and the same presumptions attend its action as of any other court of general jurisdiction; and questions of fact necessary to the court's action in legally appointing a curator, must be conclusively presumed to

have been passed upon, in a collateral proceeding, and is not open for question in such proceeding.

3. ————: ————: ————: **Curator: Defect of Record.** While the jurisdiction of the probate court is conclusively presumed in appointment of curators, and if dependent on questions of fact will be presumed, in a collateral proceeding, to have been investigated and correctly decided, yet if the face of the record shows facts which leave the court without jurisdiction, no presumption can arise and jurisdiction will fail even in a collateral proceeding.

4. ————: ————: ————: **Right of Action: Estate.** Where the record of the probate court in proceedings to appoint a curator, shows that the only thing in the county owned by the minor was a right of action against a railway for damages for the death of his father, it was *held* that such right of action was an "estate" of the minor as that word is used in the statute authorizing the appointment of curators, and gave jurisdiction to the court in appointing a curator.

5. ————: ————: **Transitory Action: Situs.** A transitory right of action in a minor against a railway for the death of his father, has its *situs* in any county where the railway is found and may be sued, and authorizes the probate court of that county to appoint a curator for the minor.

6. ————: ————: **Statute: Penalty: Compensation.** Sec. 5425, R. S. 1909, providing for a right of action in widows and minors against a carrier for the death of the husband or parent caused by the carrier's negligence, and fixing the sum to be recovered at not less than $2000 and not more than $10,000, is partly penal and partly compensatory.

7. ————: ————: ————: **Statute: Widow and Children: Evidence: Support.** In order that a jury may have some basis upon which to fix the compensation to the widow or children of a person killed by the negligence of a carrier, evidence of the character of the support, care and maintenance, or want of such care, support and maintenance, is admissible.

8. **EVIDENCE: Support: Divorce.** In an action by a curator of minors against a railway company for the death of the father, who had been divorced from the mother, her petition for divorce was read to her as a witness. It contained many charges which, if true, would be admissible as evidence on the question of the character of support he rendered to the children, and also many which had no bearing on that question. She was then asked by the railway company if those charges were true, and the court refused to allow an answer. *Held*, that the ruling was proper, since it would have put improper evidence before the jury along with that which was proper.

9. NEGLIGENCE: Pleading: General or Special Allegations. Where a petition against a railway company for the death of a passenger through negligence of the company, charges generally that it was caused by the train being wrecked by reason of a defective track and rotten ties,—this, whether it be called general or special negligence, requires proof of the charges and limits the case to negligence in the construction of the track, and therefore the rule *res ipsa loquitur* does not apply.

10. ————: Proximate Cause. If a car in a train leaves the rail and runs over the ties of a railway for 450 feet when it strikes defective and rotten ties which break and crumble, causing a wreck in which a passenger is killed,—the defective ties are the proximate cause of the wreck, and not the car leaving the rail.

11. ————: ————: ————: ————: Concurrent Negligence. Th fact that one car in a train "climbed the rail" before reaching defective ties which caused a wreck, was not the sole cause of the injury to a passenger, yet, if the injury would not have occurred but for the concurring cause of rotten ties, the latter is a proximate cause.

12. ————: ————: ————: ————: Two Causes: Both Culpable. If there are two causes of injury to a passenger by a railway, for each of which it is liable, it is useless to discuss which is the proximate or remote cause.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmonds* for appellant.

*Rees Turpin* and *A. P. Woodson* for respondents.

ELLISON, J.—Plaintiff is the curator of two children, aged three and six years. Their father and mother had been divorced for some time when the father was killed in a wreck of one of defendant's trains in Platte county, in this State. Charging the wreck to the negligence of defendant, this action was brought under the statute, to recover damages for the children. Plaintiff prevailed in the trial court.

Several interesting and important points have been raised by defendant and discussed by the respective counsel. Defendant challenges plaintiff's right to sue on the ground that his appointment was made by the clerk of the probate court and not by the court itself. The divorced mother and these children reside in Chicago, Illinois. The statute (Sec. 414, R. S. 1909) provides that curators for nonresident minors who "have any estate within this State," shall be appointed by the probate court. But we cannot consider the validity of the appointment as made by the clerk, from the fact that defendant's answer is an admission that the appointment was made by the court. The answer did attack the legality of the appointment, but it was upon the ground that the children were nonresidents of Missouri and had no estate therein. In pleading that objection to the legality of plaintiff's appointment, defendant refers to his appointment by the probate court without reference to the clerk and closes its answer with this prayer: "Wherefore defendant prays the court to make and enter of record a decree setting aside and annulling the order of the probate court whereby said George H. Bunting was by said probate court appointed or undertaken to be appointed curator of said Harford and Lucile Williams." Defendant thus admitted in the trial court the appointment by the probate court, and is now estopped to deny it on appeal.

But the objection that the children have no estate in this State is properly raised and we have given it due consideration. At the outset plaintiff claims that the probate court, in regard to the appointment of curators, is a court of general jurisdiction and that the same presumptions and intendments follow its action as those of any other court of general jurisdiction. That therefore questions of fact necessary to the court's action in appointing a curator, must be conclusively presumed, in a collateral proceeding, to have

been investigated and passed upon by that court; and hence the question is a closed one in this collateral case. The proposition of law thus advanced by plaintiff is correct. [Johnson v. Beasley, 65 Mo. 250; Sherwood v. Baker, 105 Mo. 472; State ex rel. v. Crouse, 231 Mo. 493.]

But there is this qualification to such statement of the law: If the face of the record shows facts which leave the court without authority to act, no presumption can arise and jurisdiction must fail. [Robbins v. Boulware, 190 Mo. l. c. 52, 53; Desloge v. Tucker, 196 Mo. 587, 601.] The defect "should be found on the face of the record, or, at any rate, in the files or returns." [Desloge v. Tucker, supra.]

In this case a fact does appear upon the face of the proceedings in the probate court which defendant claims left it without power to appoint plaintiff curator. This was a statement of record that all the children had in Jackson county, or indeed in the entire State, was the right of action now in suit. We must therefore consider whether such right is an "estate" in the sense used in the statute referred to above. Defendant, in denying such claim is an estate, likens it to the right given an administrator in sections 105 and 106, Revised Statutes 1909, to sue "for all wrongs done to property, rights or interests of another." A property right, as used in that statute, is held by our Supreme Court not to include an action by the administrator for damages for the death of his intestate. [Gilkeson v. Railroad, 222 Mo. 173; Bates v. Sylvester, 205 Mo. 493.]

But that was in reference to the claim of the injured party which his administrator sought to enforce. It was a claim for an injury to the person, as distinguished from an injury to his property,—it was held to be an injury to personal rights as distinguished from property rights. The claim in this case is not for an injury to the person of the claimants; but is

for an injury to, or destruction of, their means of support. They had a right to the maintenance and support of their father. Defendant has destroyed that support and did thereby destroy their property. So we are cited by defendant to Perry v. St. Joseph & W. R. Co., 29 Kansas, 420, which decides that a right of action for damages for wrongfully causing the death of a person, is not an estate, and that being all there was in a certain county, an administrator could not be appointed in such county. But that decision is on the ground that the deceased did not have a right of action, since it did not survive him. That the right of action was a right to a new action, the benefit of which was given by statute to the widow and children. It was not a part of the estate of the deceased at all, the judgment not being assets of the estate, and therefore there was nothing upon which to base letters of administration. Whereas in this case the right of action is in the children and belongs to them as such.

In so far as concerns the proper designation to be given to the right of these children, we think James v. Christy, 18 Mo. 162, is applicable. There, a son was killed by the negligence of a common carrier. The father sued and died while the action was pending. It was held that the father's loss was to his property in that he lost the service of his son, in which he had a property right, and that his administrator could continue the prosecution of the action.

The statute we are considering uses the word "estate" instead of "property," but that would not lessen the force of what we have said; for "estate" has equally as broad, if not a broader, meaning than "property." It has been said in some connections "to signify everything of which riches or fortune may consist." [Bouvier's Dictionary.]

But in order to give jurisdiction to the probate court to appoint plaintiff curator, it was necessary under the provisions of the statute that the estate of

the children should be in the county where the appointment is made. This cause of action existed in Jackson county. It had a *situs* there. For it is a transitory action and finds lodgment wherever the defendant may be found, notwithstanding it may have arisen in some other place. In this instance the defendant corporation was found in Jackson county and there the action was brought.

Defendant insists errors were committed in the trial in the refusal of evidence tending to show the life of deceased was of no value to the children.

The statute (Sec. 5425, R. S. 1909) under which this action was brought, reads in part as follows: Wherever anyone's death shall be "occasioned by any defect or insufficiency, unskillfulness, negligence or criminal intent above declared (the carrier), shall forfeit and pay as a penalty for every such .. . . passenger so dying the sum of not less than two thousand dollars ($2000) and not exceeding ten thousand dollars ($10,000), in the discretion of the jury." That statute has a double object,—one to protect the public by enforcing watchfulness and care on the part of the railway, and the other to secure compensation to those who have suffered damage by the wrongful act. It is therefore said to be partly penal and partly compensatory. [Gilkeson v. Railway Co., 222 Mo. 1. c. 203; Boyd v. Railroad, 236 Mo. 1. c. 82-87; Murphy v. Railroad, 228 Mo. 56.]

If the defendant is liable at all, the least amount of that liability is two thousand dollars. If the deceased be absolutely worthless in a pecuniary sense, that sum would still be properly assessed, since though it could not be compensation, it would. be the penalty allowed. There is no way to know just what part of a given verdict is penalty and what is compensation. But since the jury considers both kinds of liability, it should have some basis fixed by the evidence upon which to estimate just compensation for the loss which

the plaintiff has sustained. The loss of a thrifty husband or father who supplied all the necessities and comforts of life, would be greater than the loss of a worthless one. And since the real loss is subject to so many unforeseen accidents and contingencies of life that it cannot be estimated with mathematical accuracy, the amount thereof, within the statutory limit, is necessarily left, not to the caprice, but to the sound sense and discretion of the jury; and it is proper that they should be informed as to the character of support and help he was to those who complain of pecuniary loss by being deprived of it. [Boyd v. Railroad, 236 Mo. 54, 88-92. Matter of Meekin v. Railway Co., 164 N. Y. 145, 151.]

It was to get such information before the jury that defendant made offers of the evidence it now complains was refused by the trial court. The offer came about in this way: Plaintiff, to show the right of the children to proeecute the action, proved that deceased's wife had been divorced from him in an Illinois court. In making this proof, he introduced the divorce petition and decree rendered thereon. The petition was lengthy and contained many charges against deceased. The decree allowed the wife fifty dollars per month. Some of the charges were applicable to the question of his support and care for the children, while others were foreign to it. After this proof was thus made, defendant asked the divorced wife, who was a witness in the case, if the charges contained in the petition were true. On plaintiff's objection, the court ruled the question improper. The ruling was right; for it sought to put to the jury, *en masse,* both proper and improper evidence. Defendant then asked the witness if deceased had paid the monthly allowance and an answer was refused. We cannot say that such evidence of an isolated instance in the circumstances, unless connected in some proper way, bore on the question of his future support of the

children.    Defendant made slight attempt to show
what sort of man, as applicable to the maintenance of
the family, deceased was, further than here indicated;
confining itself to asking something about his prop-
erty, and that the court permitted.

Defendant finally insists that no case was made
by plaintiff on the facts.    Preliminary to a decision
of that point, we will determine a dispute as to the
character of the negligence charged in the petition.
There are three statements of negligence; first, that
defendant permitted its roadbed and track to become
unsafe and dangerous; second, that it permitted its
locomotive and tender and cars to become defective
and unsafe; and third, that its servants negligently,
carelessly and unskillfully ran, conducted and man-
aged its locomotive and train.    The second and third
were withdrawn by instructions and the case was pre-
sented on the first, as to the roadbed and track.    De-
fendant claims that the charge is of specific negligence
and therefore the rule *res ipsa loquitur*, which pre-
sumes negligence from the mere fact of the wreck,
does not apply.    [Roscoe v. Railroad, 202 Mo. 576, 588;
Hamilton v. Railroad, 123 Mo. App. 619.]    Plaintiff
claims that the charge is general negligence, and cites
Price v. Metropolitan St. Ry. Co., 220 Mo. 435; Logan
v. Metropolitan St. Ry. Co., 183 Mo. 582; and Mefford
v. Railroad, 121 Mo. App. 647,—and that therefore
that rule does apply and that he is entitled to recover
on the strength of that presumption.    The signifi-
cance of this controversy is that defendant claims the
cause of the wreck was in one of more of the cars
"climbing the rail" and getting over onto the ties
where the track was in perfect condition, and some dis-
tance before reaching the place of the wreck, where
the track was in bad condition; and that therefore the
defective track pleaded was not the proximate cause
of the wreck.

Whether the negligence pleaded should be called

general or special negligence, as a mere matter of designation, will not influence our conclusion. For certain it is that while the charge is general, it is limited to a certain part of the defendant's management, viz., to the condition of its track, and the evidence would necessarily be confined to such condition. Under such allegation it, of course, would not be allowable to show the wreck occurred from an error of the train despatcher, or a defectively constructed boiler in the locomotive. And so plaintiff understood, for he made proof of the defective track.

Coming to the insistence of a failure of evidence, it was shown that the train was running south at a speed of thirty-five miles an hour and was made up of an engine, a mail, a baggage, a smoking, a chair, a dining and a sleeping car. Deceased was in the smoker. There was evidence, such as indentation of the ties and jolting of cars noticed by passengers, which tended to prove (defendant insists conclusively proved) that one or more of the cars left the rail near 450 feet before reaching the place of the wreck. That the train nevertheless ran safely on for that distance and then, after passing over a switch, began to break and tear up rotten and defective ties for the space of 150 feet, causing the wreck. The engine, sleeping car and chair car remained on the track upright. The smoking car, in which deceased was, was thrown so that one end was in a ditch and the other on the roadbed. The other two cars were turned over.

Upon these considerations defendant claims that the proximate cause of the wreck was the leaving the rail 450 feet away from the scene of the wreck, for which it was not chargeable,—and not the defective track and roadbed charged in the petition; and therefore, plaintiff not having charged the cause, cannot recover. In this position defendant assumes it was not chargeable for the car leaving the track before reaching the place of the wreck and assumes that the only place

where a defective track or roadbed was shown to exist was at the immediate place of the wreck. We think these are unwarranted assumptions. The fact that the wheels of a car in a passenger train leave the rail and run along on the ties, showing no sign of a defective wheel or trucks, is evidence tending strongly to show, prima facie, that there was a defective track or road-bed as charged in plaintiff's petition at that point also (Logan v. Railway, 183 Mo. 582) and it can well be regarded as proved that defendant was guilty of negligence at both places, or, to express it differently, was negligent in both causes. The Supreme Court, in quoting from 1 Thompson on Negligence, sec. 69, says that: "The question of proximate cause does not arise in an action for personal injury occasioned by an accident resulting from two or more causes, for all of which the defendant is responsible." [Newcomb v. Railroad, 182 Mo. 687, 721.] In Kraut v. Railroad, 160 Pa. St. 327, 385, the court said: "If either cause had been absent the accident would not have happened . . . and as the defendant was responsible for both, it is useless to speculate as to which was the remote and which the proximate cause."

There is another view which supports plaintiff's case, even conceding defendant not to be chargeable with negligence in the car leaving the track before reaching the point of the wreck. If the act alleged as the ground of the action (defective track at place of wreck) is the cause, it need not be the sole cause. If there is another cause in addition to the negligence alleged, the latter "would be held a concurrent proximate cause." [1 White's Pers. Inj. on Railroads, sec. 26.] The fact that one of the cars "climbed the rail" before reaching the defective ties where the wreck occurred was not the sole cause of the injury; for the injury would not have occurred but for the concurring cause of decayed and rotten ties. The latter is therefore a proximate cause, for which defend-

ant is liable. [Bassett v. St. Joseph, 53 Mo. 290, 300; Brennan v. St. Louis, 92 Mo. 482, 486; Lore v. American Mfg. Co., 160 Mo. 608, 626; Brash v. St. Louis, 161 Mo. 433, 438; Waller v. Ry. Co., 59 Mo. App. 410, 426; 1 White's Personal Injuries on Railroads, supra.]

After a thorough examination of the record, we have found no ground which would justify our interference, and hence we affirm the judgment. All concur.