**In re ESTATE of William J. CARTER,**
**Deceased, Respondent,**

v.

**Blanche Margaret CARTER, Appellant.**

**No. 51644.**

Supreme Court of Missouri,
Division No. 1.

July 11, 1966.

Stewart, Reid & Turner, A. Ronald Stewart, Donald R. Duncan, Springfield, for respondent.

Lon S. Haymes, Springfield, W. Ray Daniel, B. H. Clampett, Daniel, Clampett, Ritterhouse, Ellis & Dalton, Springfield, and Horace S. Haseltine, Lincoln, Haseltine, Forehand & Springer, Springfield, for appellant.

HOUSER, Commissioner.

This is an appeal from a judgment of the Circuit Court of Greene County affirming a judgment of the probate court. We have jurisdiction because title to real estate is involved. Art. V, § 3, Constitution of Missouri, V.A.M.S.; Buschmeyer v. Eikermann, Mo.Sup., 378 S.W.2d 468, 469.

Our task on this appeal is to construe the will of William J. Carter, which was written in his own handwriting and signed and witnessed on May 27, 1957. We reproduce the will, omitting signatures and attestation clause.

page one.
Will.

I, William J. Carter, of Greene County, Missouri, Being of sound mind and Realizing what I am doing. Do hereby make, declare and publish the following as my last Will and Testament here by revoking all or parts of Wills heretofore by me made.

article. 1.

I hereby direct the payment of all my just debts and funeral Expenses as soon as Expedient after my death.

article II.

I have a wife, Marie Carter, and one Daughter Blanche Margaret Carter. I give, devise and bequeath my entire estate both real and personal of whatsoever kind and wheresoever situated or located to my Wife Marie Carter.

page Two.

To have and to hold untill her death or untill she remarries, and at her death or remarriage. The entire estate shall go to my daughter Blanche Margaret Carter.

And at her death in Case she should leave no direct blood Heirs, the remainder of the estate after her funeral expenses are paid and a nice monument is erected to her grave. Shall go to the direct blood Heirs of my brother Walter S. Carter.

And at any time before the death or remarriage of my wife that her and my daughter might agree to do so that they be allowed to sell any or all of the real estate and deposit or invest the proceeds there from in a Federaly insured Institution or Institutions where they will bear an income from

page Three.

interest and that they be allowed to use the income from same if they need to do so.

I hereby nominate and appoint my daughter, Blanche Margaret Carter, as Executor of this my last Will and Testament and request that she be permitted to serve as such Executor without bond.

Testator died at the age of 65 years on June 1, 1957, leaving surviving him his wife Marie, his daughter Blanche Margaret Carter and his brother Walter S. Carter. Marie elected to take against the will. Marie died on March 8, 1962. Blanche Margaret, the executrix, proposed a final settlement on the basis that the property remaining after payment of debts and expenses belonged to Blanche Margaret absolutely and in fee simple. Persons claim-

ing an interest as the blood heirs of Walter S. Carter, who would have been excluded from any interest in the estate under the proposed settlement, objected. The probate court approved a final settlement upholding the position of the collateral heirs. On appeal the circuit court found an intent to devise a defeasible fee to Blanche Margaret, subject to a shifting executory devise in the direct blood heirs of Walter S. Carter if she died without leaving blood heirs. Blanche Margaret has appealed from the judgment of the circuit court.

■ The general question is whether the will gave Blanche Margaret an absolute and indefeasible estate in fee simple upon termination of the preceding life estate in her mother, or a defeasible fee subject to divestment if she died without "direct blood heirs." The specific question is whether in providing that "at *her* death in case *she* should leave no direct blood heirs" (our emphasis) testator was referring to his wife Marie or his daughter Blanche Margaret.

Both parties assert at the outset that the will, read in its entirety, is clear and unambiguous; that it reveals the intent of the testator, and that resort to auxiliary rules of construction is not necessary.

Blanche Margaret claims that testator's intent to give her an indefeasible estate in fee simple is apparent, considering the entire will; that the court's construction of the words "at her death" as referring to Blanche Margaret's death ignores the four corners of the will, ignores the logical listing and paraphrasing of the events prefaced by the words "And at her death," ignores the presumption that the phrase "her death" has the same meaning in the disputed sentence that it had when twice previously used by testator, and ignores the situation which would result from the meaning read into the will by the circuit court, namely, that testator, incredibly, would have made no provision for the pay-

ment of the expenses of his wife's funeral or for the erection of a monument to mark her grave.

Those who claim as collateral heirs contend that it is clear from the whole will that when testator wrote "And at her death in case she should leave no direct blood heirs" he was referring to his daughter's death anytime after his death and not his wife's death.

Examining this will from its four corners and as a whole, with due regard to its directions and the true intent and meaning of the testator, § 474.430, V.A.M.S., it clearly and without ambiguity discloses a scheme, plan and design on the part of testator, after provision for his wife during her lifetime or until her remarriage, by which his estate would devolve upon and go to his heirs in his bloodlines: first to his nearest blood heir, his daughter, Blanche Margaret, and at the time of her death if she left no direct blood heirs, then to the direct blood heirs of his brother Walter. This is the dominant purpose and effect of his testament. This controlling intention must be effectuated. The words used in the testamentary writing will be subordinated to such intention and purpose. Pursuant to his general plan testator left his "entire estate" to his wife until her death or remarriage, with the right in his wife and daughter, by agreement, to convert the real estate into federally insured interest-bearing securities at any time before his wife's death or remarriage. Next, he provided that at his wife's death or remarriage the "entire estate" should go to his daughter, Blanche Margaret, not in fee simple absolute, but as an estate in fee with an executory devise over, in the nature of a shifting use, to take effect upon the contingency that the daughter die leaving direct blood heirs, failing in which the fee would be defeated and the executory devise over to the direct blood heirs of testator's brother Walter would become effective.

As we construe this will the words "at her death" immediately following the grant to Blanche Margaret refer to Blanche Margaret and not to Marie. It is generally accepted that a personal pronoun refers back to the closest antecedent noun of the same gender, unless it·is clear that reference is made to some other noun. Under this rule of grammar we believe that testator was referring back two words to Blanche Margaret and was not referring back thirty-three words to Marie. Application of these words to Blanche Margaret bespeaks the logical progression of events in the mind of a testator intent on keeping his estate in his bloodlines, after making provision for his wife: first to his daughter, then on the contingency that she die without direct blood heirs, to the blood heirs of his brother. Application of those words to Marie would make possible the coming to pass of a situation which would be utterly inconsistent with the dominant theme of this will, which is to restrict the subsequent devolution of the estate to testator's bloodlines, direct or collateral, on the contingency named. Under Blanche Margaret's construction, if following testator's death Blanche Margaret had died during Marie's lifetime and Marie had then borne children by a subsequent marriage, Marie's said children would take the estate to the exclusion of those in testator's brother's bloodline. We cannot attribute an intent on the part of testator to allow this to happen, when his testament reflects so definitely a desire to terminate Marie's enjoyment of his estate upon her remarriage and to favor his own bloodline and that of his brother. Furthermore, it is of some significance that under Blanche Margaret's construction testator does not refer directly to the contingency of the death of his daughter prior to the death of his wife, except by the reference thereto implicit in the language leaving the estate to Walter's blood heirs in case she (Marie under this construction) "should leave no direct blood heirs." That testator would

have made such an oblique and implied reference to a contingency of such importance to him is unlikely. Nor would it have been natural for testator to refer to his daughter Blanche Margaret, even indirectly, as a "blood heir." It would have been more likely for testator, who four times referred to his daughter as such, using her full name Blanche Margaret Carter three times, to have said something like "If my daughter dies before my wife dies * * *" or "If my wife survives my daughter * * *," but he did not do so.

■ Blanche Margaret relies on the fact that the grant of the estate to her ends with a period, followed by a space, and that the paragraph ends there, thereby indicating an intent to give her an indefeasible estate in fee simple absolute without limitation or qualification. It is noteworthy that the grant to *Marie* also ends with a period followed by a space, and that that paragraph could be said to end there, but no one contends that this is indicative of an intention to vest a fee simple title in Marie. The will demonstrates on its face that testator was not skilled in the use of punctuation or paragraphing, and that his spacing was unconventional. He used periods when no punctuation was appropriate or when commas were more appropriate. He omitted commas where appropriate and used them when inappropriate. He capitalized words inappropriately and in the middle of sentences. Under these circumstances testator's spacing, paragraphing, punctuation and capitalization are not reliable guides to ascertain his intention, which we have gleaned from the context of the will. We regard the periods after the grants to Marie and Blanche Margaret as punctuation mistakes which we have a right and duty to disregard under the circumstances. 95 C.J.S. Wills § 612. Treating those periods as mistakes which should be excised, the granting clauses, the contingency, and the remainder clause all flow together in one

sensible, intelligible and understandable whole.

Blanche Margaret presses for a ruling that the phrase "her death" appearing in the disputed paragraph refers to the same death as the same words used twice before, i. e., to the death of Marie; that "If a testator uses a given word in one part of his will with a certain meaning, it will be presumed that in using the word in another part he intended it to have the same significance." Hogg v. Falk, 359 Mo. 1103, 225 S.W.2d 756, 758; Snow v. Ferril, 320 Mo. 543, 8 S.W.2d 1008; English v. Ragsdale, 347 Mo. 431, 147 S.W.2d 653. The rule relied upon is an auxiliary rule of construction, of assistance in cases of ambiguity, but it is to be used only as an aid in determining the intent of the testator. "Where, as in the instant case, the intent may be clearly ascertained from the will itself, rules of that kind have little, if any, application." Commerce Trust Co. v. Weed, Mo.Sup., 318 S.W.2d 289 [3]. Such a rule of construction "* * * must yield to an otherwise manifest intention of the testator." Prior v. Prior, Mo.Sup., 395 S.W.2d 438, 443. Jarman on Wills, 8th ed., Vol. 3, p. 2071, states the rule and its limitations as follows: "* * * [W]ords, occurring more than once in a will, shall be presumed to be used always in the same sense, unless a contrary intention appear by the context, *or unless the words be applied to a different subject.*" (Our emphasis.) Here the words "her death" apply to a different person. In our judgment the intention of the testator to apply the words "her death" to Blanche Margaret, and not to Marie, is clear.

Blanche Margaret contends that the application of the words "her death" to her rather than Marie results in an incredible situation. The unreasonable, unnatural and strange result would be, she says, that this testator, whose first concern was the welfare of his wife, would have made no provision whatever for his wife's burial expenses, or for a monument for her grave. In our judgment the provisions of the will reasonably justify this rationalization: Testator, who was on his deathbed when he wrote this will (he died three days later) had in mind that he would die first; that Marie would die next, in the normally-to-be-expected course of events, and that of the three his daughter would die last. Payment of testator's funeral expenses was provided for by his will. Upon his wife's death his daughter could be depended upon to pay for her mother's funeral expenses and provide her with a monument. If his daughter died with blood heirs, having succeeded to the estate in fee, her funeral and monument costs would be paid out of her estate. This left unprovided for the situation in which the daughter died without leaving blood heirs, in which event the estate would pass to the collateral heirs. This was a distinct possibility. Blanche Margaret had not yet married. Testator, seeking to stop this gap, wrote the provision requiring payment of Blanche Margaret's funeral expenses and the erection of a "nice monument" to her grave, before the remainder of the estate should pass to the collateral heirs, who might not be as solicitous in this regard as her father, the testator. This left one situation for which provision was not made: if the daughter died without blood heirs after her father's death but before her mother's death. In that event testator, if he considered it, would reasonably have expected his wife to take care of the expenses of the daughter's funeral and monument. We conclude that the application of the words "her death" to Blanche Margaret, and the provisions with respect to funeral, etc. expenses, lead to reasonable and natural results.

In the second portion of her brief Blanche Margaret, arguing alternatively that the will is ambiguous and that the intention of the testator is unclear, seeks

to apply certain rules of construction.[1] She sees ambiguity in the question whether the words "her death" refer to Blanche Margaret or Marie, but if she is mistaken as to that and if testator meant to refer to Blanche Margaret, she claims that there is further ambiguity in that the will does not clearly indicate whether testator meant his daughter's death during his lifetime, or during Marie's lifetime, or at any time. She likens this case to Ewart v. Dalby,[1] where testator left his estate to his wife, and at her death to his daughter, "and if she dies single and unmarried and without issue," to his brother, etc. The will in that case, however, was unlike the Carter will now before us for construction. It was short, unilluminating, vague and uncertain as to the time to which the words last above quoted were referable—whether to her death during testator's lifetime, during the life tenant's lifetime, or to the moment or time of the death of the daughter, whenever that might occur. The Carter will contains the following internal evidence that testator did not have in mind the death of Blanche Margaret during his lifetime: The phrase "at her death" definitely establishes the moment or time of the event which is to control in determining whether the executory devise to the blood heirs of Walter will be effected. That phrase has no limitation as to time. It means death at any time and needs no qualifying language to be understood. It clearly refers to death as a certainty. Coleman v. Haworth, 320 Mo. 852, 8 S.W. 2d 931, 934. The provision for payment of his daughter's funeral expenses and monument cost out of the estate would have been unnecessary if testator had contemplated his daughter's death before he died, for in that event testator would have paid these bills during his lifetime. Likewise the provision for the sale of the real estate by agreement of testator's wife and daughter and the investment of the proceeds in federally insured income-bearing securities, in order to be effective, would require the daughter to survive testator. Both of these provisions are inconsistent with Blanche Margaret's theory. If testator intended her to have an indefeasible estate in fee simple absolute if she survived testator there would be no "remainder of the estate" left to go to the collateral heirs, because she would already have all of it. If it had been intended to give her an estate in fee simple absolute testator would not likely have empowered his wife and daughter to convert the real estate and use the income from the reinvestment of the proceeds; with that highest of all estates she already would have had the greater power to use not only the income but also the principal of the proceeds, acting in agreement with the life tenant. Another indication that testator did not contemplate that his daughter would predecease him is the fact that he appointed her executrix without making any substitutional provision in case of her prior death. Kindred v. Anderson, 357 Mo. 564, 209 S.W.2d 912, 914. The provision for the conversion of the real estate by Marie and Blanche Margaret and their use of the income therefrom "at any time before the death or remarriage of" Marie does not indicate that testator was contemplating his daughter's death prior to that of his wife, but the opposite. We conclude that in writing "And at her death in case she should leave no direct blood heirs," etc. testator referred to Blanche Margaret's death at any time after his death, whenever it might occur, and that he had in mind that it probably would occur after his death and after the death of his wife. There is no ambiguity in this respect and we find no reason to resort to rules of construction in order to ascertain testator's intent.

1. I. e., the rule that the law favors testator's heirs; that the law favors the early vesting of estate; and the rule applied in Ewart v. Dalby, 319 Mo. 108, 5 S.W. 2d 428, that when property is devised to A in terms denoting an intention that A take the fee, coupled with a devise over in case of A's death, without issue, the words refer to A's death without issue during the lifetime of the testator, and A surviving the testator takes an absolute estate in fee simple.

Finally, Blanche Margaret makes the point that the court erred in holding that Blanche Margaret received less than an indefeasible estate in fee simple absolute because the will devised to her "the Entire Estate," and the provision relied upon as cutting down the fee appeared later in the will in language not equally clear as that creating the fee. She relies on the rule that "* * * A fee simple estate granted by devise or bequest in a will, may not be cut down or limited by a subsequent ambiguous provision. * * *" Gehring v. Henry, Mo.Sup., 332 S.W.2d 873, 877. And see Palmer v. French, 326 Mo. 710, 32 S.W. 2d 591; Farkas v. Calamia, Mo.Sup., 373 S.W.2d 1; Carter v. Boone County Trust Co., 338 Mo. 629, 92 S.W.2d 647; and Estill v. Ballew, Mo.Sup., 26 S.W.2d 778, 70 A.L.R. 321. The converse of that rule is that "* * * if an estate be granted in one clause of the will its quantity may be cut down to a lesser estate by an express provision to the effect, or by words so strong and clear as to have that effect by plain and necessary implication." Cox v. Jones, 229 Mo. 53, 129 S.W. 495. Testator used the words "the Entire Estate" "to signify everything of which riches and fortune may consist," Bouvier's Law Dictionary; Williams v. Chicago, B. & Q. Ry. Co., 169 Mo.App. 468, 155 S.W. 64 [4]; the aggregate of property of all kinds which he might leave at his death, whether real, personal or mixed, and of whatever nature and wherever situated. He was not using these words to indicate the degree, quality, nature, extent or quantity of the interest which he was granting. It is true that the provision "The entire estate shall go to my daughter * * *," without more, would have effected a grant in fee simple absolute. Shaw v. Wertz, Mo. Sup., 369 S.W.2d 215, 218. But there was more, and we must consider what followed and give effect to all words found in the will whenever such a construction is possible. The immediately following provision that at her death "in case she should leave no direct blood heirs" the remainder should go to the blood heirs of testator's brother limits the preceding grant and cuts down the estate there granted by words which by plain and necessary implication create a defeasible estate in fee. If Blanche Margaret dies leaving direct heirs of the blood she dies owning the fee. If she dies without leaving such heirs the executory devise over to the direct blood heirs of Walter takes effect. There is no ambiguity in this language. This construction is in harmony with and gives effect to all other words of the instrument.

The judgment is affirmed.

WELBORN, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.