CASE 84—DEED, CONSTRUCTION—JANUARY 22, 1885.

# Merrifield, &c., v. Merrifield's Assignee, &c.

APPEAL FROM NELSON CIRCUIT COURT.

D. B. M. executed to his son, D. B. M., a deed of conveyance of a tract of land in Spencer county, with a reservation that the land was to be subject to the debts of the grantor and his wife, contracted during their lives.

1. *Held*—The object of the deed was not merely to give, but to secure to the grantee as much of his estate as would make him ab ut equal with the grantor's other children.

2. In every case where the meaning and intention of the parties to a contract does not plainly appear to be otherwise, it should be held to mean what the law, in the absence of an agreement, would prescribe.

3. The conclusion is a reasonable one, that in providing that the land should be subject to the debts of himself and widow, the grantor meant only such debts as either himself or his wife might contract for their necessary and comfortable support.

4. Both the widow and remainderman can not have a homestead in the same tract of land.

G. H. FULTON, C. C. McKAY, J. H. WATHEN, J. A. FULTON and C. T. ATKINSON for appellants.

1. To make a fair construction of the deed from D. B. Merrifield to his son, we must look to the relation of the parent and the burden resting upon the father to make to his son a fee-simple gift of the land.

2. There is no trust created by the deed, and it will be seen that Mrs. Merrifield is no party to it. It is clear, therefore, that she could not bind the estate for the payment of any surety debt whatever.

3. It is, therefore, insisted that so much of the judgment as gives priority to that class of debts having the name of Mrs. Abagail Merrifield upon them as surety. and subjecting the land first to the payment of said debts, should be reversed.

WM. JOHNSON for appellee, Farmers' and Drovers' Bank.

1. Appellants insist that the land is first liable to the payment of the debts of the son. We insist that it is first liable to the debts of the widow upon any fair construction of the deed, and the court below so held.

2. It matters not whether the widow was principal or surety; it is her debt, contracted by her, and, under the reservation in the deed, the land is first liable for her debts.

3. Both mother and son can not have a homestead in the land.

JUDGE LEWIS delivered the opinion of the court.

May 16, 1872, for the purpose and consideration stated in it, D. B. Merrifield, of the county of Nelson, executed to his son, D. B. Merrifield, who likewise signed it, a deed, substantially as follows:

"Whereas, I have heretofore conveyed to my son, A. H. Merrifield, the farm on which he resides, to the children of my son, J. B. Merrifield, the farm on which they reside, and to my son, W. J. Merrifield, a farm in Spencer county. Now, in order to secure to my son, D. B. Merrifield, as much of my estate as will make him about equal with the other children at my

death, I hereby convey ro him the farm on which I now reside, containing about 264 acres, and also my personal estate, cash, notes and turnpike stock, except a note given by my son, A. H. Merrifield, for $344.77, which is to be given over to my son, W. J. Merrifield, after my death, and I covenant to warrant the title. Nevertheless this conveyance is made and accepted with the following condition : *That myself and wife are to hold possession and have full control of the property hereby conveyed during our lives, or to the survivor after the death of either of us, and to be subject to the debts of both, or either of us, contracted during our lives, and funeral expenses after our death*, and that the said D. B. Merrifield shall pay my son, W. J. Merrifield, in two years after the death of myself and wife the sum of $1,000."

Within about four months after the execution of the deed Fielding Merrifield died, leaving Abagail Merrifield his widow, who, jointly with D. B. Merrifield and his family, continued, as they had done before his death, to occupy the farm conveyed.

No debts were contracted by Fielding Merrifield subsequent to the execution of the deed, nor does the record show that his widow has contracted any on her own account. But it appears that after his death D. B. Merrifield became so much embarrassed in his business and involved in debt, and involved his mother as his surety to such an extent that they united in a deed conveying to Tyler in trust, for the payment of his debts, all their property of every kind not exempt from execution, including that mentioned in the deed from Fielding Merrifield.

This action was instituted by Tyler, trustee, for the purpose of settling the estate conveyed to him, having the property sold, and the proceeds applied to pay the debts.

Of the large indebtedness of D. B. Merrifield, Abagail Merrifield became liable as his surety for almost $15,000, and the debts, without personal security, amounted to more than $7,000; and as the entire property in the hands of the trustee sold for only $12,000, a question arose between the two classes of creditors as to priority.

By the judgment rendered it was determined that the *land* conveyed by the deed from Fielding Merrifield to D. B. Merrifield is subject to the debts which Abagail Merrifield may have contracted since the death of her husband, either as principal or surety, and it was ordered that in the distribution of the fund arising from the sale the trustee should pay to the creditors upon whose debts she was surety, until they were paid in full, and the balance be held subject to the further order of court. It was further adjudged that D. B. Merrifield is not entitled to a homestead in the land. But $1,000 of the fund was directed to be set apart for the use of Abagail Merrifield in lieu of her homestead, the interest on which sum is to be paid to her annually.

From that judgment D. B. Merrifield and the creditors upon whose debts he alone is liable have appealed.

It is obvious that the fund subject to distribution will be exhausted before the preferred creditors are paid in full, and the other creditors will, under the judgment, get nothing. It is therefore a material question whether the creditors to whom preference has been given are legally entitled to it, and the determination of that

question depends upon the meaning that should be given to the clause of the deed which we have italicized, and how far that clause shall control in the construction of the deed.

It may be that the import of the clause in question, isolated and construed literally, is to reserve to the grantor while living, and afterwards to his widow, the right to subject at will the property conveyed to any debts they, or either of them, might thereafter create. But the first inquiry in this, as in every such case, is what the parties to the deed themselves meant, and understood the language employed by them to mean. And if, when the whole instrument is considered, and force and validity given as far as possible to every part of it, it can be made fairly susceptible of the actual meaning of the parties, it should be so construed.

The object of the deed as recited therein was not merely to give, but, in the language used, to *secure* to the grantor's son, D. B. Merrifield, as much of his estate as would make him about equal with his other children, to each of whom he had previously given a farm absolutely, and as conclusive evidence of such being the controlling intention and desire of the grantor, he not only specifies and describes the property which he had previously given to each of his other sons, but stipulates that a note he held against one of them should, after his death, become the property of another, and that to the latter the grantee, D. B. Merrifield, should also pay $1,000 after the death of himself and wife.

And in pursuance of the object and intention, as

thus declared and made 'manifest by the instrument itself, the grantor in express terms conveyed a definite interest in the property described, formally covenanting to warrant the title thereto, and as part consideration the grantee agreed, and, by signing the deed, bound himself to pay the $1,000 mentioned.

But if the clause in question be construed according to its literal meaning, and made to control in the construction of the deed so as to reserve to the grantor while living, and give to his widow the unrestricted and unconditional power to encumber and subject the property to their debts, without limit as to amount, or regard to the character, object or necessity of such debts, it follows that the deed instead of securing to the grantee an equal, or any share at all of his father's estate, deprives him of the right to the possession, while either of them live, of the property conveyed, and also makes contingent and uncertain what, by previous clauses of the deed, was vested and certain. In fact, instead of securing to him the property purporting to be conveyed, the deed thus construed, has the effect to deprive the grantee of what he would, by operation of law, have been entitled to absolutely at the death of the grantor. For without the deed he would then have received about the same property, or its equivalent in value, subject in part only to the dower or homestead right of the widow.

It is, therefore, clear that such a construction of the deed is inconsistent with the declared object and ascertained intention of the parties, and would operate to render the contract ineffectual; for under it the grantee could acquire no title or interest whatever not subject

to be defeated or destroyed at the will of the grantor or his widow.

But as contracts should be supported when it can be done, rather than defeated, it becomes necessary to determine whether, without doing violence to recognized rules of construction or to the language employed by the parties in this case, a meaning can be given to the clause mentioned that will harmonize it with other parts of the deed, and allow the contract carried out as they intended and understood it.

In every case where the meaning and intention of the parties to a contract does not plainly appear to be otherwise, it should be held to mean what the law, in the absence of an agreement between them, would prescribe. And as in this case the deed, when all its parts are considered together, does not show that the grantor intended to give to the grantee, his son, a less estate in value than he would have inherited from him, nor than paternal feelings usually prompt just minded men to give to their children, the deed should be so construed as to correspond with the law of descent and distribution, except so far as the parties in express and unambiguous terms have made a variance.

There can be no question of the right under the deed of the grantor and his widow to a life estate in the property, for that is in express and plain terms reserved, and is not inconsistent with the interest in remainder secured to the grantee in the preceding parts of the deed, nor is such reservation materially different from what the law gives to a widow.

The law, for the purpose of her support, secures to the widow certain personal property and a dower or

homestead right in the land of her deceased husband, but, regarding the rights and interests of the heir at law or devisee, withholds from her the right to alienate the estate.

The grantor in this case, having in view the reasonable and comfortable support of his widow, and that object only, for no other in respect to her is disclosed, reserved to her the right to hold and control, while she lived, all the property conveyed. But looking to the rights of the grantee already secured, or intended to be secured, and also to his welfare, as we must presume he did do, he withheld from her the right of alienation.

The conclusion is, therefore, a reasonable one, that in providing that the land should be subject to the debts of himself and widow, the grantor meant only such debts as either of them might contract for their necessary and comfortable support. And in our opinion such is a fair construction of the clause in question, and the only one that can be given that will make the deed consistent, and effectuate the manifest intention of the parties.

The precise age of Fielding Merrifield is not shown, but he was evidently an old man at the date of the deed, desirous of being relieved and relieving his wife of the cares, risks and responsibilities of active life. The evidence shows that his widow was more than eighty years of age when she became liable as surety for some of the preferred debts. If then it was necessary to resort to other evidence than what is furnished by the deed, the age and condition of the grantor and his wife satisfactorily show that it was not intended

for an unrestricted right to encumber the property con-- veyed to be reserved to either of them. Nor is it nec- essary to apply in this case the rule construing a deed against the grantor, in order to avoid such meaning of the clause making the reservation. For that construc- tion would even render insecure the support intended to be secured to the grantor and his widow as well as defeat the title of the son.

As, therefore, Abagail Merrifield had no right under the deed to subject the property to the payment of debts created for any other purpose than directly for her necessary and reasonable support, the court erred in giving preference to those creditors upon whose debts she was liable merely as surety for D. B. Merri- field.

The widow of Fielding Merrifield was not a party to the deed in question, nor has she, in the manner pro- vided by law, conveyed or parted with her homestead right in the land. In the case of Robinson v. Smithy, 80 Ky., 636, it was held that a widow holding a life estate in land devised by her husband, with remainder to her children, and in the occupancy of the land, was entitled to a homestead as against her creditors. Whether the widow in this case claims a life estate under the deed or not, as she was in possession at the death of her husband and never parted with her right, she was clearly entitled to the use of the $1,000 set apart in lieu of her homestead.

But both she and D. B. Merrifield can not have a homestead in the land. It was decided in the case of Meguire, Helm & Co. v. Burr, 4 Ky. Law Reporter, 659, that joint owners of a tract of land, upon which they

both live in separate buildings with their families, are each entitled to a homestead, although the land has not been divided. .

But this court has never gone so far as to determine that both the widow and remainderman can, at the same time, have a homestead in the same land, nor do we think the statute can be so applied and extended.

The theory of the homestead exemption is that the debtor requires a prescribed amount in value of land to be set apart for the support of himself and dependent family, but to accomplish such a beneficent object he must have the right to occupy and use it; and hence it is an indispensable requisite that a party claiming the exemption must be in the actual possession. But a party having merely an interest in remainder is without any right to the possession, and, in the meaning of the law, not in possession.

Wherefore the judgment is reversed as to A. H. Merrifield and Allen, Atherton & Co., and affirmed as to D. B. Merrifield.