## ANNA ESTELLE SCANLAND et al. v. HARRIETT WALTERS et al., Appellants.

### In Banc, October 18, 1924.

1. **JUDGMENT: Findings of Court.** The opinion of the trial court embodying its findings of fact and conclusions of law constitutes no part of the judgment.

2. ————: **Interlocutory: Admeasurement of Dower: Premature Appeal.** An appeal from a judgment which does not dispose of the issues tendered by the pleadings or of the parties is premature. An appeal does not lie from a judgment purely interlocutory in character. A judgment in a proceeding to admeasure dower in land decreeing that one of the defendants is entitled to dower, and 'ignoring all the issues raised by her separate cross-bill wherein she denies that either plaintiff or her co-defendant has any interest in the land, and avers that she has the full equitable title thereto, because it was paid for by her own money upon its purchase by her deceased husband, and that the deed of the administrator of the estate of her only son and heir under which plaintiffs claim title was void, because of certain jurisdictional defects in the proceedings which culminated in the sale, and ignoring the separate cross-bill of the widow of said childless son, wherein she denies that the plaintiffs have any interest in the land, and avers that the administrator's deed under which plaintiff's claim is void, upon the same

(415)

grounds set forth in her mother-in-law's separate cross-bill, and asserting her ownership of the undivided one-half interest which her husband owned at the time of his death and that the administrator's deed is a cloud upon her title, does not dispose of the issues raised by said cross-bills or of the parties, and an appeal by said co-defendants from said judgment is premature. And although it adjudges dower to the mother-in-law and appoints commissioners to admeasure and set off her dower, it entirely ignores the claim set up by the widow of her only heir.

Headnotes 1 and 2: Municipal Corporations, 28 Cyc. 352 (1926 Error, 3 C. J. pars. 257, 259.

Appeal from Ralls Circuit Court.—*Hon. John L. Plowman,* Special Judge.

APPEAL DISMISSED.

*B. B. Megown, Stout & Watson* and *Hostetter & Haley* for appellants.

*J. O. Allison* for respondents.

RAGLAND, J.—This is a proceeding under Section 347, Revised Statutes 1919, for the assignment of dower. It was instituted in the Circuit Court of Ralls County by Anna Estelle Scanland, widow of Charles B. Scanland, deceased, and Reuben F. Roy. Harriett Walters and the collateral heirs of Charles B. Scanland were made parties defendant. The petition alleged in substance that in 1901 one J. Edward Walters was the owner of a certain tract of land (described by metes and bounds) in Ralls County, Missouri, subject to the dower and homestead interest therein of his mother, the defendant Harriett Walters; that afterward the said J. Edward Walters died intestate, and in the course of the administration of his estate, and under and by virtue of an order of the Probate Court of Ralls County wherein said administration was pending, all the right, title and interest of said J. Edward Walters in and to said land was sold and conveyed by his administrator to the said Charles B. Scanland and the plaintiff, Reuben F. Roy,

who thereupon became the owners of said land as tenants in common, subject to the said homestead and dower interest of Harriett Walters; and that thereafter said Charles B. Scanland died intestate and, upon the election of his widow, she became invested with an undivided one-half of the interest in the land of which her husband died seized, the remaining one-half descending to his collateral heirs. It further alleged that the dower and homestead interest of the defendant, Harriett Walters, in said land, had not been admeasured, assigned or set off to her. The prayer was for such an assignment.

Defendant Harriett Walters filed a separate answer. In this she denied that either the plaintiffs or her co-defendants had any interest whatever in the land described in the petition. She averred that she had the full equitable title thereto, because the land was paid for with her money upon its original purchase by her husband, George Walters, the father of said J. Edward. She further averred that the administrator's deed upon which plaintiffs based their claim of title was void because of certain alleged jurisdictional defects in the proceeding in the probate court which led up to and culminated in the execution of the deed, and because of certain alleged fraudulent acts and conduct on the part of the administrator in connection therewith. All of these matters were set forth in detail. The pleading concluded as follows:

"This defendant says that said administrator's deed constitutes a cloud on her title and on the title of those acquiring any interest by inheritance from J. Edward Walters, if he owned any interest at the time of his death.

"Wherefore, this defendant prays the court to cancel and hold for naught such administrator's deed and to grant this defendant such other and further relief as the evidence may show she is entitled to, and she further prays for general relief."

J. Edward Walters left surviving him a widow, Etta Walters, but no descendants. On her application she was made a party defendant and filed a separate answer. In this she denied that the plaintiffs had any interest in the land in controversy. She averred on the contrary that the administrator's deed under which they claimed was void, and upon the same grounds as those set forth in the separate answer of the defendant Harriett Walters. She further asserted ownership of an undivided one-half of the interest which her husband owned in the land at the time of his death, and charged that the administrator's deed was a cloud upon her title. She asked for affirmative relief as follows:

"Wherefore, this defendant prays the court . . . to cancel and hold for naught such administrator's deed and to grant this defendant such other and further relief as the evidence may show she is entitled to, and to adjudicate and confirm to her her undivided one-half interest in said real estate, subject to such interest as Harriett Walters had therein as the widow of George W. Walters, deceased, and she further prays for general relief."

The affirmative matters pleaded in the answers were put in issue by replies.

After hearing the evidence the court made its findings and rendered judgment. The findings seem to have been stated in writing. They were set out *in extenso* and consisted of conclusions of both law and fact, with the reasoning employed by the court in arriving at them. In the concluding part of the statement they were summarized in this language: "The court therefore finds the issues for plaintiffs and against the defendants." Immediately following this was the judgment:

"It is therefore considered, ordered and adjudged by the court that the defendant, Harriett Walters, is entitled to dower, for and during her natural life, of a one-third part of the lands in said petition. . . . described. . . .

"It is further ordered that A. F. Smith, E. J. Cristopher, and ——— Baymiller, three competent persons, be, and they are hereby, appointed commissioners herein to assign and admeasure said dower of said Harriett Walters, and said commissioners shall, before entering upon the discharge of their duties, take an oath or affirmation, honestly and impartially to execute the trust imposed on them respectively; and it is further ordered that said commissioners or a majority of them shall proceed to the said lands and by actual admeasurement ascertain and set off the dower of said Harriett Walters, according to this judgment of the court, and said commissioners shall make a full report of their proceedings, with a plat and boundary of the lands so assigned by them as dower, to this court at the next term thereof, and this cause is continued to said next term."

From such judgment Harriett Walters and Etta Walters were granted an appeal.

After the appeal was lodged in this court defendant Harriett Walters died testate. Thereafter her executor and the one beneficiary under her will entered their voluntary appearance here, as did also Etta Walters as grantee in a deed conveying to her all of the interest in the land claimed by the said Harriett Walters, and the cause was revived in their names.

At the threshold of the case we are confronted with the question of whether the judgment rendered by the trial court is one from which an appeal lies. The opinion of the court embodying its findings of fact and conclusions of law has not been set out at length because it constitutes no part of the judgment. [33 C. J. 1052.] The judgment is simply that Harriett Walters is entitled to dower. It is manifest that such judgment does not dispose of all the issues raised by the pleadings. The principal issue was tendered by the answers of the defendants Harriett Walters and Etta Walters, and that

was whether the administrator's deed to Scanland and Roy was void. With respect to this the judgment is silent. Nor does it impliedly dispose of that issue. It is entirely consistent with the contention of Etta Walters, that Harriett Walters, as the widow of George Walters, had a dower and homestead interest in the land in question, and that upon the death of J. Edward Walters, the sole heir of George, a one-half interest in the land, subject to such dower and homestead, accrued to her as the widow of J. Edward and the remaining half descended to Harriett as his heir. Stated another way, the judgment does not dispose of the issues tendered by the crossbills. Nor does it dispose of all the parties to the record. The claim of the defendant Etta Walters is entirely ignored. The trial court no doubt intended to enter final judgment disposing of all the issues upon the coming in of the report of the commissioners appointed to admeasure the dower. As the judgment actually rendered was purely interlocutory in character an appeal did not lie from it. [Strickler v. Tracy, 66 Mo. 465.]

Upon the death of Harriett Walters her homestead and dower, if such were her interests in the land, terminated. She was in possession up to the time of her death, consequently there were no damages to be assessed. In other words the action, in so far as it had for its purpose the assignment of dower, abated upon her death. Notwithstanding, the cause of action pleaded in the crossbills persists. But there is no judgment with respect to it to be either affirmed or reversed.

The appeal was prematurely taken and must therefore be dismissed. It is so ordered. *Graves, C. J., Walker, White, James T. Blair* and *David E. Blair, JJ.,* concur.

WOODSON, J. (dissenting).—The following opinion filed by me in Division is now re-filed as a dissent to the present opinion of the majority.

The plaintiffs instituted these proceedings in the Probate Court of Ralls County against the defendants

for the assignment of dower. The plaintiffs are Anna
Estelle Scanland (widow of Charles Boone Scanland) and
Reuben F. Roy, now deceased.

This is an action for the assignment of dower in a
tract of one hundred acres of land situated in Ralls
County, Missouri.

The plaintiff's sole claim to title to the hundred
acre farm in controversy is based on an administrator's
deed dated May 27, 1910, made by Jesse B. Jones as
administrator *de bonis non* of the estate of J. Edward
Walters, deceased.

The two widows, Harriett Walters, and Etta
Walters (appellants herein) by their respective plead-
ings denied that the administrator's deed carried any
title and asked that the same be canceled as constituting
a cloud on their title, and upon an adverse finding and
judgment on the part of the special judge, Hon. John
L. Plowman, have brought the cause to this court by
appeal for review. Etta Walters claimed in her answer
ownership of one-half of the fee.

After the death of J. Edward Walters his mother,
Harriett Walters, was granted letter of administration
on his estate, dated February 28, 1907, and she
qualified as such administratrix and continued to
administer until her alleged resignation on September
25, 1909. The administration was procured upon
application of Charles Boone Scanland, a creditor.

Prior to the death of J. Edward Walters, Charles
Boone Scanland had obtained judgments against him
on notes aggregating about one thousand dollars. J.
Edward Walters left no personal estate, which fact is
shown by the records and files of the probate court *in re*
his estate.

On July 16, 1909, Reuben F. Roy and Jesse B.
Jones, as attorneys for Charles Boone Scanland, judg-
ment creditor of the estate of J. Edward Walters,
deceased, filed a petition in the Probate Court of Ralls
County, asking for the sale of the hundred-acre farm to

satisfy the judgment debts of said estate owned by their client Charles Boone Scanland, the petitioner.

(*Nota bene*): This petition is signed by both Roy and Jones as attorneys for Creditor Scanland, and this fact is important in that Jones afterwards became the alleged administrator *de bonis non* of the estate and sold the land as such and made an administrator's deed to Creditor Scanland and his co-attorney Roy for a recited consideration of $500, and acquired by quitclaim deed from Roy all of the latter's interest in said tract; this deed was on record at the time of the trial, but the fact of its being recorded was not discovered until after the cause had been submitted. However, Judge Roy admitted on the witness stand that he had conveyed to Jones by deed an undivided one-fourth interest in the tract, or one-half of what he had acquired. He of course, was not then aware that his deed to Jones was on record and was also mistaken as to the aliquot part conveyed by it. That deed is here set out in full, but I see no good purpose in copying it.

When the petition to sell the land was filed on July 16, 1909, by Creditor Scanland as aforesaid, Harriett Walters, then administratrix, was not notified of the intended filing of same twenty days prior thereto, as required by Section 154, Revised Statutes 1909, but in lieu of that David Wallace appears to have been notified as attorney of its intended filing and presentation, and appears to have signed an acknowledgment to that effect. This acknowledgment appears to be endorsed on a notice addressed to Mrs. Harriett Walters, administratrix of said estate, which is one of the files in the estate, and is in words and figures as follows:

"Received a copy of the above notice and petition on this 25th day of June, 1909.

"HARRIETT WALTERS,
"Administratrix of the estate of J. Edward Walters,
Deceased,
"By DAVID WALLACE,
"Her Attorney."

Upon the filing of the petition aforesaid the probate court on the same date, to-wit, July 16, 1909, made and entered of record an order of publication which is set out in full in the abstract. It will be noted that this order of publication requires that notice of the application to sell be given by ten hand-bills put up in ten public places. This was under the provisions of Section 152, Revised Statutes 1909. It will also be noted that this order of publication is silent as to any prescribed notice to heirs who are residents of Ralls County. According to the provisions of Section 152, Revised Statutes 1909 and Section 154 (where the creditor applies), personal notice must be served on resident heirs as required by this statute. It is the contention of counsel for appellants that the notice imparted by the ten hand-bills, even assuming everything to be regular, would only be effective as to heirs residing outside of Ralls County; and that the two widows, Harriett Walters and Etta Walters, being both resident heirs of decedent J. Edward Walters, were entitled to notice by personal service.

The order of sale was made by the probate court on August 9, 1909. It will be noted that this order of sale recites that the order of publication "has been published by posting ten copies thereof in ten different public places in Ralls County." It is the contention of counsel for appellants that the statute (Sec. 152, R. S. 1909) requires the notice to be given by posting "hand-bills" not "copies."

It will also be observed that while this order of sale attempts to get Harriett Walters into court as a resident heir by reciting that she, "administratrix and heir as aforesaid, appears by David Wallace her attorney," yet the record of the probate court, which is printed in full in the abstract, disclosed the fact that no paper or pleading of any kind was ever filed by David Wallace for or on behalf of Harriett Walters, either as administratrix or as heir. It will also be observed that this

order of sale of August 9, 1909, directed Harriett Walters as administratrix "to proceed at once to sell said real estate."

Under date of September, 25, 1909, appears another record entry of the probate court, reciting the fact that Harriett Walters resigns as administratrix and that such resignation is accepted by the court and that "the letters of administration and all authority given her as such administratrix are hereby revoked" and further that she is fully and finally discharged.

Under date of October 22, 1909, appears another entry in the records of the probate court reciting that Jesse B. Jones is appointed administrator *de bonis non* of said estate.

No renewal or additional order of sale was ever made. The November term, 1909, of the probate court passed into history and no report of sale was made by attorney Jones, now acting as administrator *de bonis non,* nor did he advise the court that no sale was made, so that the court might order a new sale as provided by Section 172, Revised Statutes 1909, being the same as Section 168, Revised Statutes 1899. The sale was actually made by Jones as shown by the report on March 19, 1910; the report of sale including the appraisement was filed March 29, 1910, and sale was approved on April 8, 1910, and the deed was made on May 27, 1910.

It will be noted that the order of publication made by the probate court under date of July 16, 1909, did not direct or order that notice should be personally served on resident heirs of Ralls County as appears to be required by the provisions of Section 152 and Section 154, Revised Statutes 1909 (where the creditor applies).

It will also be noted that Etta Walters is absolutely ignored in all the probate court proceedings except a false recital in the order of sale that she is a resident of Pike County (which seems to be a clerical error). The record, in all other respects, is silent as to her and she is treated as if non-existent.

The order of sale made August 9, 1909, contains no recital that personal service of notice, as required by Section 152, Revised Statutes 1909, had been made on Harriett Walters as resident heir, but it does contain the following recital: "And the said Harriett Walters administratrix and heir as aforesaid appears herein by her attorney David Wallace."

It is the contention of counsel for appellants that the ten days' notice to resident heirs required to be personally served on them by the provisions of Section 152, Revised Statutes 1909, is jurisdictional; and that inasmuch as no foundation for such personal service of notice had been laid in the order of court of July 16, 1909 (it only providing for service by ten hand-bills which would not be effective as to resident heirs) and as no notice in point of fact was actually served on Harriett Walters, and the record did not even contain a recital that she was personally served with such notice, therefore the court never acquired jurisdiction and the order of sale was a nullity.

It appears conclusively from the evidence that the only two people interested in the land sought to be sold were the two widows, Harriett Walters and Etta Walters, and that both of them were at that time residents of Ralls County.

It is the contention of appellants' counsel that the probate court at the time it called the case at the August term of court, to-wit, on August 9, 1909 (the date the order of sale was made) had no jurisdiction, because these notices had not been personally served on either one of the two widows; and technically there is no recital in any antecedent record entry of any waiver or alleged waiver by either of them of such personal service of notice.

According to the contention of appellants' counsel the jurisdiction of the court to make the order of sale as against Harriett Walters the heir rests solely on the recital contained therein, to the effect that "Harriett Walters administratrix and heir as aforesaid appears herein by her attorney David Wallace."

It will be noted that this record entry shows no waiver by either of the two widows of the ten days' personal service of notice required by Section 152, Revised Statutes 1909, to be made on resident heirs.

All the records and all the files in the estate were put in evidence. The petition for the sale was not sworn to by Creditor Scanland.

The attention of the court is also called to the fact that, there being no personalty—only land—a question arises on this record as to whether there could be a discovery of unadministered assets, so as to give the probate court jurisdiction to appoint an administrator *de bonis non* as provided by Section 54, Revised Statutes 1909 (Sec. 46, R. S. 1919).

It will be noted that the record entry of the probate court reciting the presentation of the report of sale, etc., which appears to be under date of March 28, 1910, shows and recites that the sale is made under an order of the court made at its February term, 1910; this is contradicted by the other records introduced in evidence (all record entries being introduced), from which it appears that no order whatever had been made to sell real estate at the February term, 1910; it is also contradicted by the recitals in the report of sale itself, wherein it shows that the sale was made in obedience to the order of sale made at the August term, 1909, which directed Harriett Walters to sell as administratrix, etc.

I. In stating the facts of the case I have also stated the various contentions of counsel for appellants, for such contentions emphasize facts, and illuminate the significance of the case.

The first contention of counsel for appellants is stated as follows: "The recital in the order of sale that Harriett Walters, administratrix and heir as aforesaid, appeared by David Wallace, attorney, was insufficient to show waiver of process as to her for lack of authority in an attorney (under general employment) to waive original service for his client." They cite these cases: Brad-

Attorney:
Authority
to Represent
Party.

ley v. Welch, 100 Mo. l. c. 267; Craig v. Smith, 65 Mo. 536.

We have read these two cases carefully and are unable to see in what possible way they bear upon the merits of this case. The first one involved the construction of a contract made between property owners and some attorneys as to whether or not they were so employed, and it was held that they were not. The second case was where the record showed affirmatively that the defendant was not served, and that the attorneys who were employed by certain other defendants in the same case, and who had filed an answer for the defendants without specifying which of the defendants they represented, testified that they had never been employed by the objecting defendant to answer for him. In that case this court very properly held that the court acquired no jurisdiction over that defendant.

But that is not this case. The record affirmatively shows that David Wallace, a regular practicing attorney at the Ralls County bar, appeared as attorney for Mrs. Harriett Walters, as administrator, and as heir, and there is not a scintilla of evidence tending to show that he was not so employed by her in that case. In the absence of such evidence this court in the case of Miller v. Continental Assurance Co., said: ''There is a strong presumption in favor of a duly licensed and practicing attorney to act for a client he professes to represent and that he was duly authorized to appear and represent him in court.'' That case seems to completely cover and control this case. The only objection counsel for appellant seems to urge against it is that the record nowhere shows that David Wallace represented Mrs. Walters, except, as previously stated, attending the sale of the land. I am unable to understand the force and effect of that objection. It is the authority of the attorney to represent the party which binds him, and not the record entry that he makes which gives the attorney the authority to have it made.

There is a presumption as to probate courts, as there is to circuit courts, that where such courts proceed to adjudicate any matter within their jurisdiction the presumption is that all facts and notices and summons necessary to give such jurisdiction exists, at the time of such adjudication, and the mere fact that the record fails to show some notice or other fact *in pais* will not avail to impeach the record. [State ex rel. v. Wilson, 216 Mo. 215; Gates v. Tusten, 89 Mo. 13, 1. c. 18; Huxley v. Harrold, 62 Mo. 516; Cox v. Boyce, 152 Mo. 576, 1. c. 582.]

In Covington v. Chamblin, 156 Mo. 574, 1. c. 587, it is said: ''The order approving the sale of the real estate in question was a final judgment of the probate court, impervious to collateral attack, and subject to impeachment in a direct proceeding for that purpose only, for defects apparent upon the face of the record, going to the jurisdiction of the court, or for fraud.'' To the same effect are: McClanahan v. West, 100 Mo. 1. c. 320-1; Freeman v. Thompson, 53 Mo. 183, 1. c. 190; Leonard v. Sparks, 117 Mo. 103, 1. c. 117; Bingham v. Kollman, 256 Mo. 573, 1. c. 590; Desloge v. Tucker, 196 Mo. 587.

We are therefore of the opinion that the administratrix was properly represented by David Wallace.

II. The fact that one or more terms of court intervened between the time of making the order of sale and the date of the sale does not invalidate the sale.

**Sale: At Subsequent Term.** [Rhodes v. Bell, 230 Mo. 138, 1. c. 160; Camden v. Plain, 91 Mo. 117, 1. c. 130.] There is no merit in this contention.

III. It is next insisted by counsel for appellants that the probate court had no jurisdiction to make the order of sale until both proof of publication **Sale Without Personal Service.** and service of notice on resident heirs had been established. Our observations recorded in Paragraph One of this opinion dispose of this contention.

IV.   Independent of what has heretofore been said I am unable to see how it can logically be contended that either Harriett or Etta Walters is entitled to notice of the intended application for an order of sale of the real estate in question.   Neither of them was an heir or devisee of her husband, and the statute referred to only requires personal notice to be given to heirs and devisees.   In Desloge v. Tucker, 196 Mo. 587, l. c. 599, this court held a legatee was not entitled to notice under that statute.   And in Brawford v. Wolfe, 103 Mo. 391, l. c. 398, it was said:  "The widow, at common law and under our statute, has dower in the lands of which her husband dies seized.   The law invests her with this right without election or other act upon her part, and this is all the law does invest her with, unless she, herself, does some act required by law.   Upon the death of the husband, the title to the land, under the laws of descent in this State, passed to and vested in his next of kin, subject to the widow's right of dower.   If the title vested in the heir, it did not vest in the widow.   At the time the conveyance was made the title was in the heir, one-half thereof subject to be divested, and vested in the widow, upon making and filing her election in the manner and within the time pointed out and prescribed by law.   When her election is properly made she loses her dower right altogether, and becomes seized in lieu thereof of an estate in the land.   Previous to her election she had no estate, but merely a right in action—a right to have her dower assigned and set off to her out of the land."   In Wells v. Moore, 16 Mo. 478, l. c. 481, it was held that a widow entitled to dower was not an heir.

The records of the probate court in evidence show that Harriett Walters was appointed administratrix of her son's estate on February 28, 1907, and the order of sale was made August 9, 1909, more than two years after such appointment.   There is no showing of any election by Etta Walters as widow.   Under Section 355, Revised Statutes 1909, her right to election expired at the end of

*Personal Service to Widow.*

one year from appointment of the administratrix, and she could thereafter claim nothing but her dower. Her dower interest could not be affected in any way by the administrator's sale. This statute as to notice to heirs and devisees cannot be construed to include doweress. Can it be construed so as to require notice to the doweress whose dower interest cannot be sold for the estate debts? I think not.

V. Approval of report of sale is a final judgment and can not be attacked in a collateral proceeding. [Robbins v. Boulware, 190 Mo. 33; Wolf v. Robinson, 20 Mo. 460; Camden v. Plain, 91 Mo. 129; Sims v. Gray, 66 Mo. 616; Johnson v. Beazley, 65 Mo. 250; Henry v. McKerlie, 78 Mo. 416; Bray v. Adams, 114 Mo. 491; Reed Bros. v. Nicholson, 158 Mo. 631; Covington v. Chamblin, 156 Mo. 587.]

*Judgment Approving Sale.*

VI. Proceedings of probate court are presumed to be regular after final judgment, especially in collateral proceedings. [Robbins v. Boulware, 190 Mo. 33; Covington v. Chamblin, 156 Mo. 574; Desloge v. Tucker, 196 Mo. 587; 1 Woerner's Probate Law (2 Ed.) sec. 145.]

*Collateral Attack.*

VII. And especially is this true in this State, where after great lapse of time, during which files may be lost or destroyed, courts indulge very favorable presumptions to uphold judicial sales, and, in the absence of something of record showing the contrary, the presumption will arise from an order of sale and deed and approval of such sale that all requisite antecedent steps were taken. [Agan v. Shannon, 103 Mo. l. c. 668.]

*Lapse of Time: Presumption.*

Probate courts are established by the organic law, the Constitution, and their judgments and proceedings are entitled to the same credit and presumptions accorded to courts of general jurisdiction. [Robbins v. Boulware,

190 Mo. 1. c. 43; Noland v. Barrett, 122 Mo. 181; Johnson v. Beazley, 65 Mo. 250; Camden v. Plain, 91 Mo. 117.].

There are some other minor questions presented for determination, but they are all subordinate to those already disposed of, and can in no way affect the results before stated.

There being no error in the record, the judgment of the lower court should be affirmed.