ANN ESTELLE SCANLAND ET AL. v. ETTA WALTERS ET AL., Appellants.
—26 S. W. (2d) 603.

Division One, April 2, 1930.

*B. B. M.egown, D. M. Stout, Hostetter & Haley* and *Drake Watson* for appellants.

1086

*J. O. Allison* for respondent.

LINDSAY, C.—This suit was brought in the circuit court by Ann Estelle Scanland and Reuben F. Roy, as plaintiffs, claiming ownership of the property here in controversy—100 acres of land in Ralls County—under a deed made in March, 1910, to Charles B. Scanland and Reuben F. Roy, by Jesse B. Jones, as administrator *de bonis non* of J. Edward Walters, deceased. After the making of the administrator's deed Charles B. Scanland died intestate, leaving no descendants, and his widow, Ann Estelle Scanland, elected to take one-half of his estate. The common source of title is George W. Walters, who, at the time of his death in March, 1901, owned and occupied, as his homestead, the 100 acres of land here involved. George W. Walters died intestate, leaving Harriet Walters, his widow, and their son, J. Edward Walters, sole heir of George W. Walters. J. Edward Walters died in December, 1902, intestate, leaving no descendants, but leaving his widow, Etta Walters. At the time of the death of George W. Walters, J. Edward Walters and his wife Etta, as well as George W. Walters and his wife, were living upon the land in controversy. J. Edward Walters lived on the land until his death. The order of sale of the land was made in 1909, by the Probate Court of Ralls County, in the administration of the estate of J. Edward Walters, deceased, for the payment of his indebtedness, a demand for approximately $1,000 in favor of Charles B. Scanland. The order was that the land be sold "subject to the homestead and dower interest of Harriet Walters, widow of George W. Walters, deceased."

This suit was brought in May, 1920, against Harriet Walters, and against the heirs at law of Charles B. Scanland, deceased; and, the plaintiffs, alleging their ownership of the land through the deed of the administrator of J. Edward Walters, deceased, asked that the homestead and dower of Harriet Walters be assigned and set off to her. Etta Walters upon her application was made a party defend-

ant, and she and Harriet Walters filed their separate answers. Harriet Walters in her answer denied that either the plaintiffs or her co-defendants had any interest whatever in the land described in the petition. She averred that she had the full equitable title thereto, because the land was paid for with her money, upon its original purchase by her husband George Walters, the father of said J. Edward Walters. There was no evidence to sustain that allegation. She further averred that the administrator's deed upon which plaintiffs based their claim of title, was void, because of certain alleged jurisdictional defects in the proceedings in the probate court, which led up to and culminated in the execution of that deed, and because also of certain alleged fraudulent acts and conduct on the part of the administrator, in connection with the sale made under the order of the probate court. These matters are set forth in detail and will have some mention, later. Harriet Walters by her answer also averred that the administrator's deed constituted a cloud upon her title, and upon the title of those acquiring any interest by inheritance from J. Edward Walters, if he owned any interest at the time of his death. She prayed the court to cancel and hold for naught the said administrator's deed, and to grant to her such other relief as the evidence showed she was entitled to.

Etta Walters in her answer also denied that the plaintiffs had any interest in the land in controversy, and alleged that the administrator's deed under which they claimed was void, and upon the same grounds as those set forth in the separate answer of Harriet Walters. She also asserted ownership in herself of an undivided one-half of the interest which her husband J. Edward Walters owned in the land at the time of his death; and charged, that the administrator's deed was a cloud upon her title; and she asked for affirmative relief, praying that the court cancel and hold for naught the administrator's deed, and grant her such other and further relief as the evidence might show she was entitled to, and that the court adjudicate and confirm to her her undivided one-half interest in said real estate, subject to such interest as Harriet Walters had therein as the widow of George W. Walters, deceased; and also prayed for general relief.

The reply of the plaintiffs to the answer of Harriet Walters was a general denial, and the reply to the answer of Etta Walters was a general denial, and the plea that she was barred of dower by the ten-year Statute of Limitations.

There was no assignment of dower to Etta Walters, and she filed no election to take one-half of her husband's estate.

The trial court adjudged that Harriet Walters was entitled to dower of one-third part of the land in controversy, and appointed commissioners to admeasure and set off such dower; but, the court

entered no judgment disposing of the issues made by the answers and cross-bills of Harriet Walters and Etta Walters. Harriet Walters and Etta Walters took an appeal to this court. [Scanland v. Walters, 305 Mo. 415, 265 S. W. 688.] Pending that appeal Harriet Walters died, testate, and her executor, and one Ed McGee, sole devisee under her will, entered their appearance in this court, and the cause was revived in their names. It was held upon that appeal that the judgment of the trial court was merely interlocutory; that an appeal did not lie from it; and the appeal was dismissed.

Before the case came on for further hearing, Reuben F. Roy died, and upon his death he was succeeded by his widow Margaret Roy, and, upon her death, by his daughter Margaret Ruth Roy, who became party plaintiff, adopting the allegations of the petition. No amended petition was filed, and no amended answer was filed by Etta Walters; nor was answer filed by Ed McGee. Each of them filed a motion to dismiss the cause on the ground that the cause of action had become extinct by the death of Harriet Walters, and no final judgment had been rendered in the cause. These motions were overruled. The trial court found and adjudged upon the further hearing, that the deed made by Jesse B. Jones as administrator to Charles B. Scanland and Reuben F. Roy, was valid; that neither Etta Walters nor Ed McGee had any interest in said real estate; that the fee simple title to the same is now in the two plaintiffs, Ann Estelle Scanland and Margaret Ruth Roy, and the defendants, collateral heirs of Charles B. Scanland, deceased, and that Etta Walters and Ed McGee take nothing by their answers and cross-bills.

In the abstract on this appeal there is set forth a stipulation into which it is said the parties entered, providing that the original bill of exceptions in the cause on the first hearing shall be considered and used on the present appeal. The stipulation is not incorporated in the last or final bill of exceptions. The abstract on this appeal does not set forth the evidence contained in the first bill of exceptions, but contains a short statement in narrative form of a part of the evidence.

The appellants here are Etta Walters and Edward McGee upon appeals taken separately. Each of them was represented upon the trial by counsel. The case on appeal is submitted upon a brief signed by counsel for Etta Walters, and also by other counsel for Edward McGee. In this brief there is no attempt made to set forth the claim of either appellant as distinguished from the claim of the other. Edward McGee filed no answer; at least, we find no recital in the record that he filed an answer, and he seems to have been treated as adopting the answer of Harriet Walters, as the devisee under her will.

It appears from what is shown in the record that in February, 1907, Harriet Walters was appointed administratrix of the estate of her deceased son J. Edward Walters, and qualified as such; that afterward the demand was allowed in favor of Charles B. Scanland against said estate; that afterward upon the application of said Scanland as creditor, the probate court made the order of sale of this land subject to the homestead and dower interest of Harriet Walters; that afterward Harriet Walters resigned as such administratrix, and in her stead, Jesse B. Jones was appointed administrator and qualified as such, and thereafter, the sale of the land was made by him to Charles B. Scanland and Reuben F. Roy, and approved by the probate court and the deed made to the purchasers. The indebtedness of J. Edward Walters to Charles B. Scanland originated in 1897, and was kept alive by judgments, and judgments of revival, until the allowance made by the probate court.

Harriet Walters, in her answer, assailed the validity of the proceedings in the probate court, alleging that Etta Walters was never personally served with notice of the proceedings in that court, and that she, Harriet Walters, was never notified or brought into court prior to the time of the order of sale; that Jesse B. Jones was personally interested as one of the purchasers at his own sale, and became the purchaser of a part interest of that portion claimed by Reuben F. Roy. In her answer, she further averred that she was the administratrix of the estate of J. Edward Walters, but that she never resigned, and that the appointment of Jones was illegal and void. Etta Walters in her answer, averred the probate court never had nor acquired any jurisdiction over the person of Harriet Walters or over herself; that neither of them was ever legally notified or served with notice of the proceedings. Also, she denied that Jesse B. Jones was ever the legal administrator of said estate, and charged that said Jones was personally interested as one of the purchasers at his own pretended sale. As to all of these questions, the trial court had before it the evidence as shown by the records of the probate court, and also such oral testimony as was introduced. We mention these matters merely by the way, because, in the brief before us, aside from some statements with citations of authorities to the effect that an administrator cannot purchase for himself through an agent, or purchase as an agent for another, there is no claim of invalidity of the sale, except that founded upon the contention that Etta Walters had a homestead in the land sold, and therefore, the order of sale was absolutely null and void, and must be so held in a collateral proceeding. While counsel for appellants in their statement of the facts state it as a fact that no notice was given to Etta Walters, they do not, under any part of their argument, or contentions made under points stated and authorities cited, claim that the order of sale

was invalid for any reason, except the one reason that Etta Walters as widow of J. Edward Walters had a homestead in this land, and therefore the order for the sale of the land for payment of his debt was a nullity. Counsel in their brief make the following assignment of errors:

"The court erred in not sustaining the demurrer offered by the appealing defendants at the close of plaintiff's testimony, and again offered at the close of all the testimony, and in refusing to cancel the administrator's deed to Scanland and Roy as constituting a cloud on said defendants' title, and also erred in holding that the alleged sale of the 100-acre tract was valid and erred in not holding that the said tract was not subject to sale for creditor Scanland's judgment debt, and erred in not finding that said tract was the homestead of Etta Walters as well as the homestead of Harriet Walters, and therefore not subject to sale and erred in failing to hold said purported sale to be a nullity."

Following this assignment of errors, under the head, "Brief and Argument," are certain statements accompanied by citation of authorities as tending to support the contention of counsel that Etta Walters had a homestead in the land, and for that reason the order of sale was null and void. Upon no other ground is it contended that the order of sale was void. That being so, we do not go into the question of the jurisdiction of the probate court, or the validity of the order of sale, as dependent upon the validity of the appointment of Jones as administrator, or as dependent upon notice to Harriet Walters and Etta Walters. If it was intended by the assignment of errors quoted, to raise the question of jurisdiction of the probate court, for want of notice, and on the other related grounds pleaded in the answers and cross-bills, that phase of the case is not briefed by counsel for appellants, nor does the abstract set forth the evidence upon such issues. In that situation such ground is treated as abandoned. [Peak v. Taubman, 251 Mo. 390, 398; National Bank of Commerce v. Laughlin, 305 Mo. 8; Compton v. Construction Co., 315 Mo. 1068, 1089.]

The claim that the order of sale of the land was void, being briefed and argued solely and specifically upon the ground that Etta Walters had a homestead as widow of J. Edward Walters, deceased, we consider that question.

Upon the death of George W. Walters, J. Edward Walters as the only heir took title to the land subject to the homestead and dower rights of his mother, Harriet Walters. There was no administration of the estate of George W. Walters, deceased, and his widow filed no election to take a child's share of the estate, and no assignment of homestead and dower was had. When J. Edward Walters died, his mother Harriet was his sole heir at law under the Statute of Descents

and Distributions (Sec. 2908, R. S. 1899; Sec. 303, R. S. 1919) subject to the rights of Etta Walters his widow. Etta Walters made no election as widow of J. Edward Walters to take one-half of his estate absolutely, nor was any proceeding taken to set off dower to her.

A statement in narrative form of the testimony of Etta Walters is shown in the abstract. According to her testimony, she and J. Edward Walters were married in 1890, and from about that time they lived in a house upon the tract in controversy, which was about 200 yards from the dwelling of George W. Walters and his wife, Harriet. Three weeks before the death of J. Edward Walters, the house in which he and his wife lived was destroyed by fire, and they went to live in the other dwelling with his mother Harriet Walters, who had continued to live in that dwelling after the death of her husband. The death of J. Edward Walters occurred three weeks after this removal. After the death of J. Edward Walters, his widow lived with her mother-in-law, Harriet Walters, in the home of Harriet Walters, and Etta Walters testified that she kept what furniture she had in the home of her mother-in-law, and thereafter made that her home. Under the circumstances of this case Etta Walters could have a homestead in this property, only if her husband J. Edward Walters had such ownership and occupation of the land at the time of his death as met the statutory requirements for transmission of a homestead by operation of law to his widow. Upon the death of George W. Walters, his widow Harriet had her right of quarantine, and homestead and dower rights in the land; and, without any judicial proceedings assigning or in setting off to her such rights, she continued to occupy the mansion house; and, so far as the evidence shows was in possession of all of the land. There is no claim that after the death of George W. Walters, his widow, and his son J. Edward Walters, set off her homestead by agreement, or agreed upon any division of the land, or, that there was any agreement by which J. Edward Walters occupied or separately used a part of the tract. Under the facts shown it is not perceived how Etta Walters could have had a homestead in this land, unless, it can be said that she held such homestead jointly with Harriet Walters, or, that she and Harriet Walters can be said to have had separate homesteads in the same land at the same time.

In 29 Corpus Juris, page 791, Section 24, it is said: "Two separate homesteads cannot exist in the same land at one and the same time. Thus an heir entitled to the reversion cannot acquire a homestead interest in the land during the existence of the widow's homestead therein." In the same volume at page 809, Section 59, it is said: "A homestead cannot be occupied jointly by two persons so that both shall have estates of homestead therein." Cases cited and to

the foregoing effect are Brokaw v. Ogle, 170 Ill. 115; Murchison v. Plyler, 87 N. C. 79; Cornish v. Frees, 74 Wis. 490; Merrifield v. Merrifield, 82 Ky. 526; also Green v. Griffis-Newbern Co., 125 Ark. 456. The possession and right of possession of Harriet Walters was exclusive until the homestead and dower were assigned and set off to her. If that had been done, her possession and right of possession would have been exclusive as to the portion of the land set off to her, and the portion so set off, if done, would necessarily have included the dwelling house and appurtenances. She and J. Edward Walters were not tenants in common. As the sole heir of George W. Walters, J. Edward Walters owned the land subject to his mother's rights of homestead and dower. Her interest was of the nature of a life estate (Brewington v. Brewington, 211 Mo. 48; Maupin v. Long-acre, 315 Mo. l. c. 881; Cave v. Wells, 319 Mo. l. c. 944) and necessarily included the dwelling house and appurtenances, and his estate in the land appurtenant to the dwelling and forming her homestead was of the nature of a vested remainder. The right of occupancy by him did not exist by operation of law until and unless the homestead of his mother was set off, and then would have existed only as to that portion of the land constituting the excess found over the homestead. The sale was made within less than ten years after the death of George W. Walters, and while Harriet Walters was in possession under her right of quarantine, of dower unassigned, and of homestead. Whatever right Etta Walters had, she derived from J. Edward Walters, and we are unable to see how she could be held to have had a homestead in this land under the circumstances of this case.

The claim asserted by Etta Walters in her answer and cross-bill was title as widow to one-half of the interest which her husband owned in the land, at the time of his death. If it be conceded that she had this undivided one-half interest without filing an election to take one-half we cannot conceive how, under the facts in this case, it constituted a homestead for her. In her answer and cross-bill, she did not assert the right to a homestead in the land. The claim that although she filed no election she was entitled to one-half of the estate of her husband, seems to be based upon the theory that she did not have common law dower of one-third for life in the land of her husband, and therefore was not required to file any election in order to be endowed with one-half absolutely. It was held in Klocke v. Klocke, 276 Mo. 572, that where the husband owned a vested remainder in land, and died without descendants during the pendency of the life estate, and without ever having been in possession, his widow was not entitled to dower under Section 345, Revised Statutes 1909, and consequently was not required by Section 353, Revised Statutes 1909, to elect in order to take the one-half interest

in his land given to her by Section 351, Revised Statutes 1909, as a substitute for dower, or, that her "right to election dower . . . is not dependent on her having common-law dower." [O'Brien v. Sedalia Trust Co., 319 Mo. 1. c. 1008.] The sections just mentioned of the Revised Statutes of 1909, are respectively Sections 315, 321 and 323, Revised Statutes 1919, and respectively Sections 2933, 2939 and 2941 of the Revision of 1899; but, on the theory that Etta Walters took one-half of her husband's estate in the land, although she filed no election, yet, such one-half interest was necessarily taken subject to the payment of her husband's debts. At any rate, counsel for appellant Etta Walters make no claim in their brief of the existence of an unassigned common-law dower of one-third for life. Under repeated rulings the widow's consummate dower in her deceased husband's real estate becomes extinct unless she has commenced a proper and appropriate proceeding for the recovery and admeasurement of dower within ten years from the death of the husband. [Cave v. Wells, 319 Mo. 1. c. 942; Falvey v. Hicks, 315 Mo. 1. c. 459, and cases there cited.]

We have considered the cases cited by counsel to the effect that the sale of the homestead of a deceased householder by his administrator to pay the debts of the decedent not legally charged thereon during his life is an absolute nullity, and void upon collateral attack. Such cases are Dennis v. Gorman, 289 Mo. 1; Balance v. Gordon, 247 Mo. 119. We have further given consideration to the ruling in Maupin v. Longacre, 315 Mo. 872. It was there held that the provision of the statute that "such homestead shall not be subject to sale for the debts of the husband unless such debts be legally charged thereon during his lifetime" implies "a lien, encumbrance or claim which is to be satisfied out of the *specific thing* or proceeds thereof to which it applies." That construction of the statute was followed in Nettleton Bank v. Estate of McGauhey, 318 Mo. 1. c. 950. Under these decisions the indebtedness is not brought within the statute by the mere fact that it was contracted before the acquisition of the homestead.

We have further taken into consideration the point contended for by counsel for appellants, that Harriet Walters' right of occupancy did not prevent the vesting of an estate of inheritance in J. Edward Walters as the only son of George W. Walters, deceased. Giving the decisions we have mentioned their full effects they do not reach the question determinative of the validity of the order of sale by the probate court, or touch the ground upon which counsel attack the validity of the order. The rulings made in those decisions would determine the invalidity of this order of sale, only, upon the premise that Etta Walters had a homestead in the land ordered to be sold for payment of the debts of J. Edward Walters.

The remaining point mentioned in the brief of counsel for appellant, is, that the administrator cannot purchase directly or indirectly at his own sale. The answers and cross-bills allege that Jones, the administrator, "was personally interested as one of the purchasers at his own pretended sale and became purchaser of a part interest at such sham sale and that such sale was void because of those facts." It was asked that the deed be cancelled. The record evidence set out in the abstract shows that the land was sold at public sale at the court house door during the sitting of the probate court, and upon notice published · for four weeks in a newspaper published in Ralls County, and that the sale was approved by order of record of the probate court. The order of approval was a final judgment. In Covington v. Chamblin, 156 Mo. l. c. 587, it was said:

"It is well settled law in this State that final judgments of probate courts in matters within their jurisdiction are as conclusive as those of courts of general jurisdiction. [Camden v. Pain, 91 Mo. 117, and cases cited; Rowden v. Brown, 91 Mo. 429; Price v. Springfield R. E. Assn., 101 Mo. 107; Sherwood v. Baker, 105 Mo. 472; Macey v. Stark, 116 Mo. 481; Rogers v. Johnson, 125 Mo. 202; Cox v. Boyce, 152 Mo. 576.]

"The order approving the sale of the real estate in question was a final judgment of the probate court, impervious to collateral attack, and subject to impeachment in a direct proceeding for that purpose only, for defects apparent upon the face of the record, going to the jurisdiction of the court, or for fraud. [Cases, supra.]"

The validity of the sale was not attacked in any way until the answers were filed in this case, more than ten years after the date of the sale. The appellants asked for equitable relief, and the proceeding under the issues made was one in equity. The trial court found against appellants upon the question immediately under consideration. The abstract filed by the appellants does not set forth all of the evidence as to the claim that Jones was interested personally in the purchase of a portion or interest in the land sold. The abstract, instead of setting forth the record evidence and the oral testimony, contains a statement in narrative form of what the evidence was upon the transactions leading up to and culminating in the sale, but this statement contains nothing as to the evidence upon the question whether Jones was interested in the sale as a purchaser of an interest or portion in the land. It appears from statements in the brief that Jones was dead before the trial was had. Reuben F. Roy died before the hearing was had upon the issues tendered by the cross-bills. In the statement in the abstract of what the evidence showed, there is no statement of evidence of the connection of Jones as purchaser or as acquiring an interest in the land. There is nothing shown in the abstract upon that point, except a brief statement

in narrative form, of the testimony of Reuben F. Roy, given upon the first hearing. The statement is made in the abstract that this testimony was in rebuttal, but the testimony in chief upon that subject is not set out in any manner. The trial court cannot be convicted of error from what is shown. Upon this question it was incumbent upon the appellants to bring up and set forth the whole of the evidence. [State ex rel. v. Jarrott, 183 Mo. l. c. 217, 218; Guinan v. Donnell, 201 Mo. 173.]

It results from the foregoing that the judgment should be affirmed. *Seddon* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.